**INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW-CIO) and its LOCAL 647 et, Plaintiffs, v. L. T. PATTERSON COMPANY, Defendant.**

Common Pleas Court, Hamilton County.

No. A-142373. Decided May 29, 1956.

Goodman & Goodman, for plaintiff.
Long & Bloom, for defendant.

## OPINION

By RENNER, J.:

This action was instituted by the International Union, United Automobile, Aircraft, Agricultural Implement Workers of America (UAW-CIO) and its Local 647, and a number of individual members of the Union, who were employed by The L. T. Patterson Company, the defendant herein. The plaintiffs seek to recover vacation pay under a collective bargaining agreement entered into July 1, 1953, between the plaintiff Union, acting on their behalf, and the defendant corporation as their employer.

On November 3, 1955, plaintiffs filed a motion for a judgment in their favor on the pleadings and on the facts presented in an agreed statement of facts which was filed on October 27, 1955. When this motion came on for argument counsel for plaintiffs and defendant agreed not only to submit this motion for consideration by the court, but also to submit the case for final consideration on the pleadings and the stipulation of facts of October 27, 1955, with an additional stipulation which was subsequently filed on March 8, 1956.

The agreed statement of facts filed October 27, 1955, contained the following stipulations:

"1. The individual plaintiffs were members of the plaintiff, International Union, United Automobile, Aircraft, Agricultural Implement Workers of America (UAW-CIO) through its Local No. 647. The defendant was and is an Ohio Corporation and as such was engaged in the sales and service of Chrysler and Plymouth automobiles at 1010 Gilbert Avenue, Cincinnati, Ohio, at the times set forth herein.

"2. Attached hereto and marked 'Exhibit No. 1' is the written collective bargaining agreement between the plaintiff and the defendant, setting forth the entire agreement of the parties, dated July 1, 1953, and effective for the period of one year.

"3. Attached hereto and marked 'Exhibit No. 2' is a schedule, listing the employees, their date of hire, their date of termination of employment and their hourly rate of pay at said termination.

"4. The defendant ceased operation of its service and repair business on March 5, 1954, for the reason that the business was being operated at a loss; and ceased complete operation of sales of automobiles on May 25, 1954. Defendant did not act arbitrarily or in bad faith to defeat the plaintiffs' rights.",

and the agreed statement of facts filed March 8, 1956, provides as follows:

"1. That the Court of Common Pleas of Hamilton County, Ohio, has jurisdiction of the within cause.

"2. That the individual parties plaintiff may be joined as parties plaintiff herein."

The pleadings in the case and these two stipulations constitute all of the evidence in the case. The pleadings and the agreed statements of fact leave but one issue remaining for determination by the court, viz., under the facts thus presented does the collective bargaining contract relied upon by the plaintiff, expressly or by implication, provide for vacation pay which would entitle them to recover such pay?

Four of the plaintiffs, Gus Grote, John Guthrie, James L. McCann and Raymond McAtee did not have six months of continuous employment to qualify for the minimum vacation pay provided in the table in Art. XIV, Sec. 1 of the agreement. Another plaintiff, Richard C. Juengling, quit his employment on or about April 1, 1954. These five plaintiffs are not entitled to vacation pay. All of the remaining plaintiffs had more than six months of continuous service prior to June 1, 1954, but none of them were employed on June 1st.

The defendant ceased operation of its service and repair business on March 5, 1954, because the business was being operated at a loss and it ceased all operation of its business on May 25, 1954.

It is conceded in the agreed statement of facts that the company did not act arbitrarily or in bad faith to defeat the plaintiffs' rights when it closed its doors. The question of bad faith or fraud is therefore eliminated.

Counsel for plaintiffs and defendant each have submitted briefs and supplemental briefs citing and reviewing many cases dealing with vacation pay in collective bargaining contracts. An examination of these cases cited by both parties shows the marked difference of opinion of some of the state and federal courts which have dealt with rights to vacation pay arising out of collective bargaining agreements.

Some of the cases cited by plaintiffs are of little or no assistance in the case here for decision before me. Without attempting to distinguish each of them I refer to those cases in which the contract under consideration contained express and specific provisions for vacation pay in the event of a discontinuance of the business; also to those in which relief was granted to employee because of fraud or bad faith on the part of the employer, which is not an issue in this case and also to at least one of the cases in which it appeared that the court resorted to expediency rather than law in reaching its decision.

In several of the remaining cases cited by counsel for plaintiffs the courts dealt with collective bargaining agreements which were silent as to vacation pay in the event the business was discontinued and which presented facts somewhat similar to those in the case at bar. In these cases the courts granted relief to the employees on the theory that vacation pay was, in effect, additional pay which an employer was obliged to pay, the same as he paid the regular hourly or weekly wage of the employee, but that the payment of it was postponed until the recognized vacation period.

It is upon these cases that plaintiffs' counsel rely and base their conclusions which are set forth on page two of their memorandum of authorities:

"It is clear from a consideration of all the decisions that in all events the worker has earned his vacation pay."

No Ohio cases are cited which support this theory advanced by plaintiffs and I have found none. The finality with which this statement speaks seems to remove all question of doubt as to its correctness, but I am unable to reconcile it with the law as expressed by the courts of Ohio. In cases involving the construction of contracts our courts have been consistently guided by a number of well recognized rules

of construction. Some of these long established maxims and principles of law which are applicable to this case are succinctly stated in **9 O. Jur. pp. 397, 398 and 399, Sec. 173:**

"Where the meaning of a contract is clear upon its face, there is said to be no need, nor right, of construction. It has been stated that 'the first general maxim of interpretation is that it is not allowable to interpret what has no need of interpretation. When a writing is worded in clear and precise terms, when its meaning is evident and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents.' Similarly it has been said that there is no question of interpretation of an oral contract. A court is not privileged to make contracts for others, nor in any wise to change the conditions on contracts lawfully made because of some personal notion of what in a particular case good morals and fair dealing may require. A party to a written contract is bound only by the words of the contract. There can be no intendment or implication inconsistent with the express terms of the written contract. A court may not read language or terms into a contract, nor can any be taken away by construction."

And, also in the same volume at pp. 400 and 401, Sec. 174:

"The courts nevertheless are justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent or make it speak contrary to what, as may be gathered from all the terms and the tenor of the contract, was the intention of the parties. It has been said that 'presumptions must not be indulged to defeat the manifest intention of the parties to the contract. The purpose is to promote such intention where the language of the parties is not clear.' While much regard will be given to the clear intention of the parties, yet where the contract is entirely silent as to a particular matter, the court will exercise great caution not to include in the contract by construction something which was intended to be excluded. Where a written contract is silent in regard to a matter of much importance to both parties it is not likely to be presumed that it was intended to imply an agreement upon that point. The implication should clearly appear from the whole instrument. In accordance with the maxim, 'expressio unius est exclusio alterius,' there can be no implied promise in a contract in relation to any matter that is specifically covered by the written terms of the contract itself. The enumeration of certain things in a contract excludes other things of like character. * * *"

In **Ullman v. May, 147 Oh St 468** (decided February 28, 1947), the Supreme Court again reaffirmed its beleif in the soundness of these principles of law.

"Syl. 1. Where a written agreement is plain and unambiguous it does not become ambiguous by reason of the fact that in its operation it will work a hardship on one of the parties thereto and corresponding advantage to the other. **(Ohio Crane Co. v. Hicks, 110 Oh St 168,** approved and followed.)

"Syl. 2. Courts do not relieve a party competent to contract from an improvident agreement in the absence of fraud or bad faith."

And I find no earlier or later expressions of the Court to indicate that these sound guides should be abandoned. Until these rules of construction are abandoned by the Supreme Court of Ohio, and that court adopts the theory of law advanced by counsel for plaintiffs which is based upon a few isolated cases, there can be no right of recovery in cases of the kind such as the one presented here.

Let me assume, however, that the meaning of the contract in this case is not clear and that it needs to be interpreted. The field of inquiry as to its meaning, because of the stipulations is limited to the contract itself. I cannot look to facts leading up to or surrounding the execution of the agreement. There are, however, several revealing clauses and provisions in the agreement which express the intention of the contracting parties. The first is contained in Article VII and is part of paragraph 2 of Step 4:

"The arbitrator shall not have the power to add to or subtract from or modify any of the terms of this agreement supplement hereto, * * *."

This is not intended as a limitation that should apply only to an arbitrator. It is an expression of intention that the contract is complete in itself and must be so recognized and respected by all. Section 1 of Article XIV also evidences the intention of the parties. It reads as follows:

"Employees (including employees laid off but still carried as employees), who prior to June first of the current year have had the length of continuous employment specified in the table below shall be entitled to the corresponding vacation at their basic rate of pay:

"Six months to one year _____ 25 hours
"One year or more _____ 50 hours
"Three years or over _____100 hours."

There can be no question that before a person is entitled to vacation pay he must have had the length of continuous employment specified in the table.

Plaintiffs argue that having met that requirement the person was not required to be in the employment of the defendant company on June 1st of the current year and defendant contends that he was required to be employed by the company on June 1st to be entitled to vacation or vacation pay.

"Employees" according to the generally accepted meaning and as defined in the dictionaries are those who are in the employment of another. When the employment ceases they are referred to as "former" or "ex-employees."

That the parties construed the meaning of the word "employees" in the generally accepted and limited sense is illustrated by the words in parenthesis immediately following the word "employees." Those words enlarge the meaning to include a class of persons who, in the generally accepted sense, were no longer employees. Having made provision for those laid off the contract suggests that the provision for vacation pay, if business ceased, was considered and rejected; or that it was overlooked completely or that it was intended to have been included but, by inadvertence, it was omitted from the contract. If the absence of such a provision is attributed to either of the first two reasons the

plaintiffs are not entitled to recover; if it is the latter the remedy is reformation and not construction and plaintiff can not recover in this action.

This, therefore, brings me to the same conclusion previously expressed.

Please present an entry finding for the defendant and against the plaintiffs and rendering judgment for the defendant.