102 Cal.App.2d 943 (1951)
227 P.2d 463
DIVISION OF LABOR LAW ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS, Appellant,
v.
MAYFAIR MARKETS (a Corporation), Respondent.
Docket No. 162588.
Court of Appeals of California, Appellate Department, Superior Court, San Diego.
February 14, 1951.
*944 Pauline Nightingale, Edward M. Belasco and Leon H. Berger for Appellant.
Mitchell, Johnson & Bates and Elbert J. Sheffield for Respondent.
GLEN, J.
Plaintiff brought this action on behalf of its assignor for one week's vacation pay alleged to be due its assignor from defendant employer. This appeal is on the judgment roll alone, findings of fact and conclusions of law having been waived in the trial court.
*945 Plaintiff's assignor was employed as a clerk by defendant under a collective bargaining contract negotiated between the defendant and the Retail Clerks Union. Insofar as material here, the contract provides as follows:

"SECTION VII. VACATIONS:
"(A) When the regular employee has been in the employ of the Employer for twelve (12) consecutive months either prior to or after the execution of this agreement, such employee shall be entitled to and shall receive one (1) week vacation annually with pay. When the regular employee has been in the employ of the Employer for thirty-six (36) consecutive months either prior to or after the execution of this agreement, such employee shall be entitled to and shall receive two (2) weeks vacation annually with pay. All time lost from employment because of reasonable absence from work through sickness or other emergencies, or temporary lay-off, shall be considered as time worked for the purpose of determining the length of employment.
"(B) Vacation period shall be granted between April 1st and October 1st of each year, or at other times, if mutually agreeable to the Employer and the employees affected, but in all cases at least ten (10) days notice of the date of vacation shall be given each employee. When a holiday falls during an employee's paid vacation, such employee shall receive an additional day's vacation for such holiday.
"(C) Any employee who has qualified for vacation with pay, or who is laid off or discharged, except for his own misconduct, or who resigns, shall receive vacation wages, prorated on the basis of the period worked at the time of said interruption or termination of employment." (Italics added.)
Plaintiff's assignor was regularly employed from May 15, 1948, to March 13, 1949, inclusive, by defendant, a period of approximately 10 months, when his employment was terminated by sale of the employer's business. Plaintiff contends the employee is therefore entitled to one week's vacation pay because his employment was terminated before he completed one year of service through no fault of his own, and he was thus prevented from performing his side of the contract by defendant. Furthermore, it is contended that if the employee cannot recover on the contract he should recover for 10 months' vacation pay, on a pro rata basis on the theory of substantial performance or quantum meruit.
*946 There is no contention that the employee was employed for any fixed period or that he was illegally or wrongfully discharged or that the employer in any way breached the contract. It is conceded by both parties that the vacation pay was a part of the consideration furnished by the employer and was thus not a bonus or gratuity. The provisions of section VII of the contract above quoted are set forth in haec verba in the complaint, and admitted in the answer.
[1] Since this appeal is upon the judgment roll and findings were waived, we must presume that the trial court found all facts necessary to support the judgment and that the evidence was sufficient to support the judgment. (Credit Bureau of San Diego v. Horeth, 60 Cal. App.2d 47 [139 P.2d 962]; Miller v. Pacific Freight Lines, 40 Cal. App.2d 451 [104 P.2d 1069].)
"Contrary to the rule contended for by defendant we must, on this appeal, in determining whether the judgment shall be reversed or affirmed, construe all ambiguities in the contracts against defendant and in favor of plaintiff. This is true, if for no other reason, than that on a judgment roll appeal it will be presumed that all evidence necessary to support the findings was received. (Freeman v. Gray-Cowan, Inc. (1933), 219 Cal. 85, 88 [25 P.2d 415].)" (Transportation Guarantee Co. v. Jellins, 29 Cal.2d 242, 245 [174 P.2d 625].)
Although this appeal is on the judgment roll, defendant contends the contract was submitted to the lower court for construction and that the lower court ruled that the contract was uncertain and received evidence bearing upon the intent of the parties as well as the construction placed upon the contract by the parties themselves.
[2] Where the construction of the contract is submitted to the trial court by the parties and evidence in aid of interpretation thereof is received, the trial court's interpretation is ordinarily conclusive on appeal if supported by any competent evidence.
Although not necessary to sustain the judgment, an examination of the record bears out the defendant's contentions. It contains exhibits consisting of three forms of contract apparently negotiated over the years by the defendant and the Clerks Union, all of which contain subsection C as above quoted. Among the exhibits is a letter from the Clerks Union which negotiated the contract on behalf of plaintiff bearing upon the construction of section VII by the parties which is contrary to the plaintiff's contentions.
*947 "It is firmly established that `the appellate court will accept or adhere to the interpretation (of a writing) adopted by the trial court  and not substitute another of its own  ... (2) where parol evidence was introduced in aid of its interpretation, and such evidence ... is not before the appellate court.' (4 Cal.Jur. 10-Yr.Supp. (1943 rev.) § 192, p. 146, and cases cited; see, also, 2 Cal.Jur. § 549, pp. 934-939; Estate of Rule (1944), 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].)" (Transportation Guarantee Co. v. Jellins, 29 Cal.2d 242, 254, 255 [174 P.2d 625].)
The terms of a contract may be manifested by conduct when not stated in words. (Civ. Code, § 1621.)
"And where the meaning is doubtful, the acts of parties done under a contract afford one of the most reliable means of arriving at their intention. The law recognizes the practical construction of a contract as the best evidence of what was intended by its provisions." (6 Cal.Jur. 304, 305.)
"Contemporaneous exposition is in general the best." (Civ. Code, § 3535.)
[3] No doubt the parties in negotiating their contract could have expressed an intention concerning vacation pay during the first year of employment. Since they did not do so and parol evidence was taken to establish their intent and the construction of the contract, the trial court's interpretation thereof is necessarily binding upon us.
The employee having been in the defendant's employ for less than a period of one year had not qualified for and was not entitled to vacation pay upon the termination of his employment. The plain terms of the contract itself, when its language is given the ordinarily accepted meaning, so provides.
It is contended by plaintiff that so far as the evidence and pleadings show, the employee during the first year may have been working toward vacation pay and thus entitled to an allowance for the time he was employed. It is, however, just as logical to conclude that the employee had in mind the following language of section VII, subparagraph A, of the contract:
"When the regular employee has been in the employ of the Employer for thirty-six (36) consecutive months either prior to or after the execution of this agreement, such employee shall be entitled to and shall receive two (2) weeks vacation annually with pay."
*948 [4] The contract under consideration here contains no fixed period of employment, and the employment could be terminated at the will of either party. (Lab. Code, § 2922.) Plaintiff's assignor was not prevented from performing his contract and thus entitled to enforce the same within the meaning of sections 1511 and 1512 of the Civil Code because, as is conceded by the plaintiff, the employer's termination of the employment was lawful, was not arbitrary, and was not done in bad faith.
[5a] The sale of its business by defendant was not unjustified and is conceded to be bona fide and not made in order to defeat the employees' rights. The sale was one of the hazards of the business world which the parties could well have guarded against in the contract relating to vacation pay had they so desired. Therefore, section 1511 of the Civil Code, concerning the prevention of performance by one party is not applicable.
"The right of the employer, for general economic reasons, to make use of a smaller staff to operate his business, to decrease his production, or to go out of business entirely if he desires to do so, we regard as indubitable. For example, if an employer has employed ten men to operate ten machines, he may, for such reasons, employ only nine men to operate the ten machines or he may operate only nine machines with only nine men, or, if he chooses, he may cease all operations....
"I do not doubt that an employer possesses the right to go out of business or to decrease his production at any time or for any reason that he sees fit. These weapons remain to him whether he be engaged in a struggle with his competitors or with his employees.... To hold otherwise would in fact deprive the employer of the control of his business." (Union Drawn Steel Co. v. N.L.R.B., (1940) 109 F.2d 587, C.C.A. 3.)
Since there is no contention that the employer acted arbitrarily or in bad faith in terminating the employment by sale of its business, this case does not fall within the rule of substantial performance or quantum meruit announced in the case of Roberts v. Mays Mills, Inc., 184 N.C. 406 [114 S.E. 530, 28 A.L.R. 338]; and Zwolanek v. Baker Mfg. Co., 150 Wis. 517 [137 N.W. 769, Ann.Cas. 1914A 793, 44 L.R.A.N.S. 1214].
[6] If there was any question of substantial performance by plaintiff it could have been litigated by the trial court *949 on the pleadings before it, and since we have only the judgment roll before us, we must presume that that issue was passed upon by the trial court.
[5b] Considering the record before us, we cannot find that the plaintiff is entitled to recover upon quantum meruit for the reasonable value of the 10 months' service rendered by the employee in view of our holding that the employer did not arbitrarily or in bad faith or illegally terminate the employment. To allow recovery upon quantum meruit would be to rewrite the contract for the parties without any showing of such necessity and would be contrary to the express terms of the contract and the construction placed upon it by the parties themselves.
To entitle plaintiff to recover on quantum meruit, the employer would have had to illegally or arbitrarily or fraudulently or unjustifiably prevent performance by the employee and the employee would have had to perform substantially and be prevented from complete performance by the employer's wrong, as was held in the case of Roberts v. Mays Mills, Inc., supra, and Zwolanek v. Baker Mfg. Co., supra.
In the Roberts case, supra, the employer on January 15, 1920, promised its employees, in writing, a Christmas bonus if they remained in the company's employ until the end of the year. The plaintiff was discharged on September 13, 1920, and denied a bonus. It appears that the reason for his discharge by the company was that he had uttered some criticism of an officer of the company outside the course of his employment and that he was not discharged because of any dissatisfaction with his services. The trial court had taken the question of wrongful discharge from the jury. The court, after pointing out that the bonus was not a gratuity but was an inducement to the plaintiff to continue in defendant's employ, and was in fact a supplemental contract, held that an employee under the circumstances was entitled to recover on quantum meruit if discharged arbitrarily and without sufficient cause, and ordered a new trial in order that the question of whether or not his discharge was upon sufficient grounds or was arbitrary and without cause could be passed upon by the jury as a question of fact. The court at page 531 of the Southeastern citation frames the question for decision as follows:
"This case presents for the first time in this court the construction of the effect of an offer by employers to extend *950 a bonus to employees provided they remain a specified length of time, which offer is accepted by the employee entering upon his employment upon such inducement. Should the employee fail to execute his part of the agreement by remaining for a specified time, or is dismissed for failure to do efficient work or for any other good cause, he forfeits his claim to the bonus offered. The question here presented is: Can the employer arbitrarily terminate such agreement at any time without legal and sufficient cause?"
At page 535 [114 S.E.] the court answers the question in the following language:
"The employee being liable to a forfeiture of all bonus if he quits before the specified time, it would be a breach of faith, and, as one of the authorities above quoted says, `perilously near the perpetration of a fraud,' if the employer were not liable for a breach of such supplementary contract on his part to the extent at least of payment of the bonus earned up to the time of the discharge, upon a quantum meruit basis, when he has discharged the employee for whatever motive if the ground was not legal and sufficient for termination of the offer of extra compensation for continuous service in the employer's service."
In the Zwolanek case, supra, the employer offered to permit employees to participate in surplus earnings provided they were in the regular employ of the company for a specified period of time. Plaintiff's employment was terminated when he had completed all but one day of the necessary period to qualify him for the bonus. In this case the trial judge directed a verdict for the defendant, and upon appeal the court held that the jury might well have found that there was substantial performance by the plaintiff and that the defendant arbitrarily violated its contract; that there was no justification for the discharge and that the defendant's sole object and purpose in discharging the plaintiff was to prevent him from recovering his share of the profits offered to the employees. At page 773 of the Northwestern citation the court observes:
"We hold that the jury might have found from the evidence that the plaintiff had substantially performed his contract at the time of the discharge, and was entitled to recover on this ground. The jury might also have found that the defendant violated its contract with the plaintiff in discharging him when it did; that there was no justification for the discharge, and that defendant's sole object and purpose in *951 making it was to prevent plaintiff from securing his share of the profits offered to its employees; and, finally, that the plaintiff did not consent to his discharge. Under such a state of facts, the plaintiff is entitled to recover. It is true, as a general proposition, that a party making an offer of a reward may withdraw it before it is accepted. But persons offering rewards must be held to the exercise of good faith, and cannot arbitrarily withdraw their offers, for the purpose of defeating payment, when to do so would result in the perpetration of a fraud upon those who, in good faith, attempted to perform the service for which the reward was offered. First National Bank v. Hart, 55 Ill. 62, and cases heretofore cited."
Other cases relied upon by plaintiff, in which the employee was allowed to recover for vacation pay or bonus in full or upon a pro rata basis, are all cases in which the employee had fully qualified for vacation pay under the terms of the contract or statute in question, and such cases are not applicable to the facts here. Undoubtedly, if plaintiff's assignor had been in the defendant's service for a period of one year, he then would have been entitled to recover one week's vacation pay, and if the employment had been terminated thereafter he would have been allowed to recover on a pro rata basis, because such right was recognized and provided for in the contract between the parties.
We see no other basis, such as mistake or inadvertence in the preparation of the contract, or mutual acceptance of terms not specified in the contract, to allow recovery upon quasi contract in this case.
Considering the terms of the written contract itself, the conduct of the parties in construing the same, the fact that the termination was lawful in all respects, we cannot find the plaintiff is entitled to recover vacation pay as claimed for its assignor.
For the foregoing reasons the judgment is affirmed.
Turrentine, P.J., and Burch, J., concurred.