22 N.J. Super. 381 (1952)
92 A.2d 40
TEXTILE WORKERS UNION OF AMERICA AND GEORGE EARDLEY, PLAINTIFFS-RESPONDENTS,
v.
PARIS FABRIC MILLS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided October 30, 1952.
*382 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Paul Rittenberg argued the cause for appellant (Messrs. Shavick, Rittenberg & Shavick, attorneys).
Mr. Sol D. Kapelsohn argued the cause for respondents (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The defendant appeals from a judgment in favor of plaintiff George Eardley, entered in the Passaic County Court in Eardley's action, as assignee, to recover for employees' vacation pay claimed to be due under a labor contract. Pertinent provisions of the labor contract and the factual background, which are set forth in the reported opinion of the trial judge (Textile, etc., America v. *383 Paris Fabric Mills, Inc., 18 N.J. Super. 421 (Cty. Ct. 1952)), need not be repeated here.
The labor contract provided that if an employee quit before June 1, he should receive no vacation pay. The defendant contends that the employees here involved did quit before June 1, because they went on strike against the defendant on April 30, 1951, and continued on strike until after June 1, 1951. The trial judge held that no quitting or abandoning of the employment occurred merely because the employees went on strike against the employer, and that the relation of employer and employee existed on June 1, 1951; and we agree. Jeffery-DeWitt Insulator Co. v. N.L.R.B., 91 F.2d 134, 112 A.L.R. 948 (4 Cir., 1937).
The defendant also argues that no vacation benefits are payable, because the contract under which such benefits are claimed was terminated by the Union as of April 30, 1951, more than one month before the date fixed in the contract as the date upon which the employees' eligibility for vacation benefits was to be determined, namely, June 1. The trial court held that "* * * when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation. In re Wil-Low Cafeterias, Inc., 111 F.2d 429 (2 Cir., 1940); Division of Labor Law Enforcement v. Ryan Aeronautical Co., 106 Cal. App.2d Supp. 833, 236 P.2d 236 (Cal. Super. Ct., App. Dept. 1951); Hercules Powder Co. v. Brookfield, 189 Va. 531, 53 S.E.2d 804 (Va. Sup. Ct. App. 1949)." In the three cases cited by the trial court, it was held that the employee became entitled under the terms of the contract to the particular benefit while the contract was still in effect. Here, by action of the union, the contract itself was terminated more than one month before June 1, the day as of which eligibility of the employee was to be determined by the contract provisions. The question presented, then, is whether the parties to the labor contract intended that vacation pay earned while the contract was in effect, namely, up to April 30, 1951, would be payable if *384 the relation of employer and employee still existed on June 1, and on that date the other obligations of the contract necessary to entitle the employee to the benefits were met, even though the contract itself was terminated as of April 30.
We start with the premise that contractual provisions for vacation with pay are neither gratuity nor gift, but rather a supplement to the employment agreement which constitutes an offer of reward or additional wages for service, to which the employee becomes entitled upon performance of the obligations imposed by the contract. In re Wil-Low Cafeterias, Inc., above. But the contract may impose conditions which must be met before the employee becomes entitled to such benefits. Textile Workers, etc. v. Firestone Plastics, etc., Co., 6 N.J. Super. 235 (App. Div. 1950), certif. denied, 4 N.J. 515 (1950); Treloar v. Steggeman, 333 Mich. 166, 52 N.W.2d 647 (Sup. Ct. 1952).
Were the vacation benefits earned by these employees while the contract was in effect, and to which they as employees on June 1 were entitled under the terms of the contract, conditioned upon the existence of the contract on June 1? We think not. Although the contract made specific provision that either the employer or the union could terminate the contract as of April 30 of any year, by giving the required notice of such intention to the other party, no provision was made concerning the effect of such termination on the rights of employees to vacation benefits earned while the contract was still in effect. However, the contract did provide that if an employee died, or if bankruptcy, permanent cessation of plant operations, sale or removal of the business from the jurisdiction of the union local, occurred before June 1, the vacation pay would become immediately payable to the employee or to his heirs. We consider this last-mentioned provision a strong indication of the intention of the parties that an employee should not be deprived of vacation benefits earned while the contract was in effect, except as specifically provided in the contract; namely, if the employee quit or was justifiably discharged before June 1. Further, *385 let us suppose the employer instead of the union had terminated this contract as of April 30. We think it clear that the parties to this contract had no intention that such a termination would deprive the employees of all vacation pay earned during the eleven months the contract was in force. There is nothing to indicate any intention that a different result should occur if the union instead of the employer terminated the contract.
Judgment affirmed.