[Civ. No. 5094.   Fourth Dist.   Dec. 20, 1955.]

DIVISION OF LABOR LAW ENFORCEMENT, Appellant, v. ANACONDA COPPER MINING COMPANY (a Corporation), Respondent.

Pauline Nightingale, Edward M. Belasco and Leon H. Berger for Appellant.

Lonergan & Jordan for Respondent.

MUSSELL, J.—This is an action for wages and penalties brought by appellant as assignee of two former employees of respondent Anaconda Copper Mining Company. The wages

were claimed to be due the employees for vacation pay under the terms of a collective bargaining agreement between respondent and the union of which appellant's assignors were members. The provisions of the agreement upon which the action is based are as follows:

"Article X. Vacations:

"Any employee who has been on the payroll continuously for one year prior to July 1, or who, during the term of this contract, completes one year of such continuous service shall be entitled to one week's vacation with six (6) days' pay at the average regular daily rate established for the class or classes of work performed by such employee during the pay period just preceding the date of taking vacation if such employee has worked not less than 225 days during such year; provided, however, where such employee has worked less than 225 days during such year he shall receive vacation pay at the rate of one day's pay for each 50 shifts worked during said year's service with fractions in proportion. Any employee who has been on the payroll continuously for five years prior to July 1, or who, during the term of this contract, completes five years of such continuous service shall be entitled to two weeks' vacation with twelve (12) days' pay, at the average regularly daily rate established for the class or classes of work performed by such employee during the pay period just preceding the date of taking vacation, if such employee has worked not less than 225 days during the fifth year of such five years' continuous service: provided, however, where such employee has worked less than 225 days during the fifth year of such five continuous years service, he shall receive vacation pay at the rate of one day's vacation pay for each 25 shifts worked during said fifth year of service, with fractions in proportion. The regular rate of pay shall not include premium payments, bonus payments, or contractor's profits.

"In the event the Company returns to a regularly scheduled forty (40) hour work-week, the following vaction allowances will go into effect sixty (60) days after such change in the workweek:

"Any employee who has been on the payroll continuously for one year prior to July 1, or who, during the term of this contract, completes one year of such continuous service, shall be entitled to one weeks vacation with five days' pay at the average regular daily rate established for the class or classes of work performed by such employee during the

pay period just preceding the date of taking vacation, if such employee has worked not less than 190 days during such year; provided, however, where such employee has worked less than 190 days during such year, he will receive vacation pay at the rate of one day's pay for each 42 shifts worked during said year's service with fractions in proportion. Any employee who has been on the payroll continuously for five years prior to July 1, or who, during the term of this contract, completes five years of such continuous service, shall be entitled to two weeks' vacation with ten days' pay at the average regular daily rate established for the class or classes of work performed by such employee during the pay period just preceding the date of taking vacation, if such employee has worked not less than 190 days during the fifth year of such five years' continuous service; provided, however, where such employee has worked less than 190 days during the fifth year of such five years' continuous service, he shall receive vacation pay at the rate of one day's vacation pay for each 21 shifts worked during the said fifth year of service, with fractions in proportion. Other provisions of the above vacation clause to remain unchanged and in full force and effect.

"An employee shall be eligible for vacation as soon as he has completed the required years of continuous service as herein set forth. His qualifying year shall date from the anniversary of his employment by the Company. However, the actual time of taking vacation shall be determined by the Company with consideration given to preference, or preferences of the employees and shall be assigned with due regard to continuity and economy of mine and plant operation."

It is alleged in the first cause of action in the complaint:

"That prior to the commencement of this action and on or about March 29, 1949, the defendant verbally employed plaintiff's assignor C. R. Lamon to perform labor and services for the defendant as a Mill Man at the union scale of wages then in effect; that pursuant to said verbal contract of employment, plaintiff's assignor continuously performed labor and services for the defendant as a Mill Man from on or about March 29, 1949, to on or about February 28, 1954, at which time the defendant laid off plaintiff's assignor because of shutting down of the mill; that during the period March 29, 1953 to February 28, 1954, plaintiff's assignor's rate of pay for performing his services aforesaid was at the rate of $14.72 per day.

"Plaintiff's assignor earned 12 days vacation with pay at the rate of $14.72 in the total sum of $176.64; that during this final year of employment plaintiff's assignor worked 330 shifts; that at the time of lay-off and subsequent thereto, plaintiff's assignor made demand on the defendant for his vacation pay in the aforesaid sum, and plaintiff made demand therefor of the defendant, but the defendant has failed and refused to pay the same, and said sum of $176.64 remains due, owing and unpaid."

In the second cause of action it is alleged:

"That prior to the commencement of this action and on or about August 1, 1945, the defendant verbally employed plaintiff's assignor Chester F. Pemble to perform labor and services for the defendant as Maintenance Man at union scale of wages; that pursuant to said verbal contract of employment plaintiff's assignor performed labor and services continuously for the defendant as a Maintenance Man from on or about August 1, 1945, to on or about March 2, 1954, earning wages therefor; that on or about March 2, 1954, the defendant laid off plaintiff's assignor for reason that the mine shut down.

"That during the period August 1, 1953, and to March 28, 1954, the plaintiff's assignor was performing services for the defendant as a Maintenance Man at the rate of $16.87 per day; that pursuant to the provisions of the collective bargaining agreement referred to above, and particularly to vacation clause aforesaid, plaintiff's assignor earned 8 days vacation pay in the total sum of $134.96; that plaintiff's assignor, during the period August 1, 1953, and March 29, 1954, worked 200 shifts: that at the time of layoff and subsequent thereto, plaintiff's assignor made demand on the defendant, for his vacation pay in the aforesaid sum, and plaintiff made demand therefor of the defendant, but the defendant has failed and refused to pay the same, and said $134.96 remains due, owing and unpaid."

In the third cause of action it is alleged:

"That on or about February 28, 1954, the services of said C. R. Lamon terminated and at said time the defendant wilfully failed and refused to pay to said C. R. Lamon the wages then and there due him in the sum of $176.64; that defendant continued said wilful failure and refusal to pay said sum for a full period of 30 days after the termination of said employment and after said wages became due.

"That on or about March 29, 1954, the services of said

Chester P. Pemble terminated and at said time the defendant wilfully failed and refused to pay to said Chester F. Pemble the wages then and there due him in the sum of $134.96; that defendant continued said wilful failure and refusal to pay said sum for a full period of 30 days after the termination of said employment and after said wages became due.

"That the sum of $441.60 is due, owing and unpaid as penalty wages from the defendant to the plaintiff on behalf of its assignor, C. R. Lamon; that the sum of $506.10 is due, owing and unpaid from the defendant to the plaintiff on behalf of its assignor, Chester F. Pemble; that no part of said accrued wages or penalty wages has been paid, and the whole thereof remains due, owing and unpaid."

Defendant demurred to the complaint on general and special grounds and the trial court sustained the demurrer as to all three causes of action. Plaintiff was allowed 15 days within which to amend the first and second causes of action and the demurrer to the third cause of action was sustaintd without leave to amend. Plaintiff declined to amend and the court dismissed the action on motion of the defendant. Plaintiff appeals from the judgment of dismissal.

It appears from the allegations of the complaint in the first cause of action that plaintiff's assignor Lamon had been employed from March 29, 1949, to February 28, 1954, a period of approximately four years and eleven months. He was therefore not qualified to receive vacation pay based on five years of service. Furthermore, he had not completed his qualifying current year of continuous service which would commence on March 29, 1953, that being the last anniversary of his employment with the defendant company. Appellant argues that under the doctrine of substantial performance Lamon was entitled to recover 12 days' vacation pay. However, substantial performance was not pleaded in the action, and although the court gave plaintiff the opportunity to amend the complaint, plaintiff declined to take advantage of the court's order in that respect.

In plaintiff's second cause of action it is alleged that Chester F. Pemble had been employed by defendant from August 1, 1945, to March 2, 1954. It appears that while Pemble had worked for defendant for more than five years his services were terminated on or about March 28, 1954, and he, therefore, had not completed his qualifying current year of continuous service, which, under the contract, commenced on August 1, 1953, as this date was the last anniversary of

his employment with the defendant company. Furthermore, neither Lamon nor Pemble were on the payroll of the defendant at the end of their respective years and this was a prerequisite to the allowance of vacation pay according to the terms of the contract. ■ The contract, insofar as is shown by the record before us, contains no fixed period of employment and the employment of plaintiff's assignors could therefore be terminated at the will of either party. (*Division of Labor Law Enforcement* v. *Mayfair Markets*, 102 Cal.App. 2d Supp. 943, 948 [227 P.2d 463].) ■ The parties to the contract here involved agreed therein as to the conditions under which vacation pay would be paid and since plaintiff's assignors failed to qualify under the terms of the agreement they cannot require defendant corporation to allow such pay. (Civ. Code, § 1439; *Division of Labor Law Enforcement* v. *Mayfair Markets*, 102 Cal.App.2d Supp. 943, 947 [227 P.2d 463]; 12 Am.Jur., Contracts, § 296.)

■ In the third cause of action plaintiff seeks to recover a statutory 30 days' penalty vacation pay over and above that claimed as vacation pay. The pleading in this cause of action incorporates all the allegations of the first two causes of action and it is then alleged that the defendant company wilfully failed and refused to pay the vacation pay sought in the first two causes of action. It is apparent that if the vacation pay sought in the first two causes of action was not payable, then there can be no recovery under the third count of the complaint.

Since plaintiff has declined to amend the complaint and a cause of action is not stated, the judgment of dismissal was proper under the circumstances shown by the record.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 17, 1956, and appellant's petition for a hearing by the Supreme Court was denied February 15, 1956.