BRIGGS and others, Appellants, v. ELECTRIC AUTO-LITE COMPANY, Respondent.

*November 29—December 22, 1967.*

For the appellants there were briefs by *Joseph J. Bartl* and *Crosby, Esch & Bartl,* all of La Crosse, and oral argument by *Joseph J. Bartl.*

For the respondent there was a brief by *Johns, Pappas, Flaherty & Harman* of La Crosse, and oral argument by *Robert D. Johns.*

HALLOWS, J. Auto-Lite was engaged in interstate commerce and operated a manufacturing plant in La Crosse, employing about 1,000 persons. The employees, including the plaintiffs, were members of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO, and also of Local Union 396. The terms and conditions of employment were governed by a national labor contract between the parent union and Auto-Lite dated January 18, 1959, and in addition by a local and subordinate labor contract dated February 11, 1959. Vacation pay was controlled by Article VIII of the national agreement, which provided:

"Vacation pay of eligible employees shall be based on total straight time earnings for the previous 12 months'

period January 1 through December 31. Any employee who is in the active employ of the Company, or laid off, or retired, or on leave of absence on December 31 shall be entitled to vacation pay, calculated as described here, but the actual payment will not be made until just prior to the time designated by the Company as the vacation period."

After some labor difficulties, Auto-Lite in May of 1959 decided to close its La Crosse plant for economic reasons and so informed the union. There is no issue of bad faith on the part of Auto-Lite. The company met with representatives of the local and national unions in May and June of 1959 and discussed the problems of plant closing. At the June meeting and by a letter of July 3, 1959, to the national union, Auto-Lite refused the union's demand for payment of vacation pay.

By their application for and acceptance of severance pay, the employees agreed, as provided in A Supplemental Unemployment Benefit Plan, they were terminating their employment and were giving up all seniority rights with Auto-Lite. By September 15, 1959, all employees had been paid their separation pay; the three plaintiffs each receiving about $3,400. After the company refused to recognize any right to vacation pay based upon earnings for the portion of 1959 during which the plant was open, neither the national nor local union nor any employee initiated a complaint under the grievance procedure set forth in the national contract.

The basic issue presented is whether the employees are entitled to vacation pay on a pro rata basis although they were not employees of Auto-Lite on December 31, 1959, because their nonemployment status on that date was caused by a unilateral act of the company and not through any fault of their own. The entitlement of the plaintiffs to vacation pay depends upon the particular terms of their contract. The cases in other jurisdictions have reached conflicting results due to differences in contractual language. However, there also seems to be a differ-

ence in the interpretation of relatively similar entitlement clauses in the labor contracts and in the fundamental approach to the problem of interpreting the language of labor contracts. There is, however, no dispute in this state that vacation pay is generally considered as constituting a form of additional compensation which is offered and paid to promote the employer's economic interests in the continuous and faithful service of its employees. *Valeo v. J. I. Case Co.* (1963), 18 Wis. 2d 578, 119 N. W. 2d 384; *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 82 N. W. 2d 172; *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769. And, as we said in *Valeo,* page 585, "If vacation rights be thought of as accruing or vesting in employees as they perform services, such accrual is qualified . . ." by various conditions in the contract like employee status on the eligibility date and these conditions must also be met.

Basically, the plaintiffs argue the national collective-bargaining agreement was made and negotiated on the assumption that various plants of Auto-Lite would remain in operation during the life of the contract and consequently, the contract quite naturally made no specific reference to the effect that a plant's closing might have upon vacation pay. For this reason, it is argued that the nonemployment status of the plaintiffs on December 31st can be disregarded and the contract should be considered only in the light of continued plant operation. Thus the only reasons for denying vacation pay would be the voluntary termination of employment by the employee or his discharge for cause, both of which reasons for termination of employment are outside the incentive purposes of the vacation-pay clause. In support of this argument, the plaintiffs point to the terms of the contract and the express exceptions to the requirement of active-employee status on December 31st, such as layoff, leave of absence, and retirement. They point out vacation pay is paid also in the event of death or military service of the employee. The counter argument, of course, is that

since the contract has detailed the exceptions to the requirement of active-employee status on December 31st these exceptions are exclusive and no others may be read into the contract by inference or implication. A respectable line of authority takes the view an employee has no right to vacation pay either on a full or a pro rata basis unless he can qualify under the terms of the agreement in the event of a cessation of the employer's business. A closing is regarded as one of the hazards of the business world which could have been guarded against in the contract in respect to vacation pay and would have been if the parties had so intended. In support of this view it is argued it is a well-known fact that collective-bargaining agreements, whether negotiated and prepared on a local or on a national level, are not drafted by persons unfamiliar with the subject matter.

Since the plaintiffs' rights depend upon the contract, we must examine its terms, not to make it speak where it is silent or contrary to what it says, but to discover what it does say. The contract provides for vacation pay based on a percentage of straight time earnings for a twelve months' period through December 31st with the percentage varying directly with seniority. Any employee who is in active employment of the company on December 31st is entitled to vacation pay as so calculated. While a minimum-qualifying period in effect is provided in the contract, it is not in issue here. The first sentence of the paragraph sets forth the basis for vacation pay for eligible employees in the following terms, "Vacation pay of eligible employees shall be based on . . . ." The second sentence defines who are eligible employees as follows: "Any employee who is in active employ . . . on December 31 . . . ." We think the meaning of this contract is plain, that employees do not become entitled to vacation pay unless they are employees on December 31st.

The provision setting forth the method of determining the amount of vacation pay in relation to total straight time of earnings is not an entitlement clause as in some

bargaining agreements but a basis of computation. True, labor contracts may be so written that the clause determining the amount of vacation pay is an entitlement provision. Of such contracts, it is often said the right to vacation pay vests or accrues as the regular work is performed and if there is no other clause constituting a condition precedent to entitlement such right survives the termination of the contract. Here, however, the sole condition of entitlement or eligibility for vacation pay, regardless of amount, was active-employee status on December 31st of each year. It is true, there are some express exceptions to the requirement of active-employment status on December 31st, namely, layoff, retirement, and leave of absence. But, there is no exception or reference to a nonactive-employment status caused by the cessation of business by the employer. We are not free to read into the contract what is not there or read out what is there and if we did, we would be remaking the contract for the parties under the guise of interpreting it.

The cases and general rules related to the problem of vacation pay are set forth and discussed in Annot. (1953), *Construction and effect of vacation pay clause in collective labor agreement,* 30 A. L. R. 2d 351; see also 51 C. J. S., *Labor Relations,* pp. 1078, 1079, sec. 243. The plaintiffs rely on *Valeo v. J. I. Case Co., supra,* wherein this court held employees could recover vacation pay where the contract was terminated although the employees were on strike. But being on strike did not deprive the employees of their status as employees on the entitlement date. We recognized in *Valeo* that the conditions of entitlement had to be met and decided such conditions were met and the right to vacation pay was not extinguished by the termination of the agreement.

In *Treloar v. Steggeman* (1952), 333 Mich. 166, 52 N. W. 2d 647, the labor contract provided for vacation benefits to employees who were on the seniority list of the company on December 1, 1947, and who had completed at least six months' work during the previous twelve months' period. The company discontinued business in

September of 1947, making it impossible for the employees to be on the seniority list on the entitlement date. The court held the employees were not entitled to vacation pay because both conditions were not met. The other arguments of the plaintiffs advanced here, namely, the closing of the plant was the unilateral act of the employer, the agreement should be liberally construed, and the eligibility date should be accelerated to the time of the closing of the plant were also made in the *Treloar Case* and rejected by the court.

In *Division of Labor Law Enforcement v. Mayfair Markets* (1951), 102 Cal. App. 2d 943, 227 Pac. 2d 463, the contract provided an employee with twelve consecutive months of employment "shall be entitled to and shall receive one week vacation." After the employee had worked ten months his employment was terminated by the sale of the business. The court rejected the argument, also made in the instant case, that the employee was entitled to vacation pay because his employment was terminated before he completed one year of service through no fault of his own and he was prevented from performing his side of the contract by the act of his employer's selling the business. The sale of the business was a hazard which could have been guarded against in the contract. Other cases involve contract provisions establishing entitlement conditions which have been held to be conditions precedent. *Givhan v. Federated Metals Division* (1961), 364 Mich. 370, 110 N. W. 2d 763; *Botany Mills v. Textile Workers Union of America* (1956), 42 N. J. S. 327, 126 Atl. 2d 389 (discontinuance of business); *International Union v. L. T. Patterson Co.* (1956), 8 Ohio Ops. 2d 334, 159 N. E. 2d 923 (discontinuance of business); *Division of Labor Law Enforcement v. Anaconda Copper Mining Co.* (1955), 138 Cal. App. 2d 92, 291 Pac. 2d 169 (discontinuance of business).

The opposite view is not without some support, but it is not persuasive. In *Livestock Feeds v. Local Union No.*

*1634* (1954), 221 Miss. 492, 73 So. 2d 128, the contract provided for the vacation pay for employees having a certain amount of continuous service prior to June 1st of each year. The company ceased business in February of 1952 and refused to pay pro rata vacation pay based on employment between June 1, 1951, and the plant's closing. The court allowed recovery on the grounds the pro rata vacation pay was due even though the June 1st date was not reached and the result was in line with reason and justice. In so deciding, it seems the court ignored the terms of the contract.

In *Calvine Cotton Mills v. Textile Workers Union* (1953), 238 N. C. 719, 79 S. E. 2d 181, the agreement provided for vacation pay on the basis of percentage of earnings for the year prior to June 1st, and the only requirement for entitlement was six months' service during that period. The factory closed on January 14, 1952. Against the claim the employees were not entitled to vacation pay because they were not employees on June 1st, the court held that under the terms of the contract the only factor involved in entitlement was six months' service during the year period and this minimum six months' period need not end on June 1st. Under the terms of the agreement in *Calvine* the employees fully met all the conditions precedent to their entitlement to vacation pay. This case is not a support for the broad argument of the plaintiffs here that entitlement factors are not conditions precedent to the existence of the right.

The plaintiffs also rely on *In re Brooklyn Citizen* (1949), 1 Misc. 2d 162, 90 N. Y. Supp. 2d 99, wherein the contract required the employees to be employed when vacations were taken; but this was impossible because the company went bankrupt. The court in deciding in favor of the employees' claim for vacation pay relied on another provision of the contract which provided that the employees were entitled to a day's vacation with pay for each seventeen days worked and this right accrued

absolutely as the days were worked. The court considered the first provision requiring employment at the time of vacation for eligibility as conflicting and was no longer a viable factor due to the closing of the business. This case is distinguishable from the instant case on the ground the contract provided for two conflicting factors of entitlement; while in the instant case the contract provides for only one determinative factor of entitlement, that of active employment on a given date. If this factor were read out of the contract, the formula for determining the amount of vacation pay would not thereby constitute an entitlement clause; it contains no such language.

The case of *In re Wil-Low Cafeterias* (*Kaftan v. Siegel*) (2d Cir. 1940), 111 Fed. 2d 429, is often cited in support of the position taken by the plaintiffs. But this case does not support the proposition that the closing of the plant does not eliminate the right to vacation pay on the theory that such pay has already been earned by the employee. In *Wil-Low* the employees had complied with all the conditions of entitlement required by their contract when the employer went bankrupt.

We must conclude the terms of the instant contract, even under a liberal construction, have not been met by the plaintiffs. While the trial court also dismissed the complaint on a second defense that the grievance procedure provided by the contract had not been followed by the plaintiffs, we do not find it necessary to decide that question since in our view the trial court was correct in deciding the plaintiffs' complaint had no merit.

*By the Court.*—Judgment affirmed.