[L.A. No. 31522. July 1, 1982.]

FRANCISCO SUASTEZ, Plaintiff and Respondent, v.
PLASTIC DRESS-UP CO., Defendant and Appellant.

**COUNSEL**

Paul, Hastings, Janofsky & Walker, Andrew C. Peterson, Elaine Holland and Curtis D. Porterfield for Defendant and Appellant.

Musick, Peeler & Garrett, Richard J. Simmons and Thomas E. Hill as Amici Curiae on behalf of Defendant and Appellant.

Gary B. McGaha and Jose A. Gonzales for Plaintiff and Respondent.

Patrick W. Henning and Louis Giannini as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BIRD, C. J.**—Under an employment policy providing for annual paid vacations, when does the right to a vacation "vest?"

### I.

The following facts are not in dispute. Francisco Suastez, respondent, was employed by the appellant, Plastic Dress-Up Co. (Plastic Dress-Up), from October 16, 1972, until July 20, 1978. Throughout this time, and in accordance with its regular policy, the company paid Suastez weekly wages based on his hourly wage. Additionally, it provided certain fringe benefits, including holiday and vacation pay.

The company's vacation policy provided that each employee was entitled to between one and four weeks of paid vacation annually, depending on the length of his or her employment.[1] According to testimony in the trial court, an employee did not become eligible for a paid vacation under the company's policy until the anniversary of his or her employment. Thus, Plastic Dress-Up customarily refused to pay vacation benefits to anyone whose employment was terminated before that anniversary date.[2]

---

[1] During the years of Suastez's employment, the company changed its vacation policy twice. When Suastez was first employed, the vacation policy provided that employees would become eligible for annual vacations on June 1, provided that they had been continuously employed since June 1 of the previous year. In 1974, this policy was changed to provide that employees would become eligible for paid vacation on the date of their anniversary of employment with the company. The change was explained to the employees orally in English and in Spanish.

In 1977, the company's policy was again changed—this time to provide more vacation time. This change was communicated orally to the employees in English and in Spanish and a written notice (in English) summarizing the policy was posted above the time clock and on the employees' bulletin board. This revised policy remained in effect at all times relevant to this appeal.

[2] In 1977, the company posted a notice in the workplace concerning its vacation benefits. That notice read, in relevant part:

Suastez received vacation pay in 1974, 1975 and 1976, but took no time off. In October of 1977, immediately after his anniversary date, Suastez took a three-week paid vacation.

Midweek in July of 1978, Suastez's employment was terminated. The company paid him $68.79 as net wages for the part of the week that he had worked.[3] At that time, Suastez requested a pro rata share of his vacation pay for the period from his anniversary date (Oct. 16, 1977) until his last day of work (July 20, 1978). Plastic Dress-Up refused to pay any pro rata vacation benefits.[4] Suastez then filed suit in the Los Angeles County Superior Court seeking damages, costs and a declaration that the company's refusal to pay him a pro rata share of his vacation pay violated California Labor Code section 227.3.[5]

After a hearing, the court dismissed the complaint for lack of subject matter jurisdiction, finding that Suastez had failed to exhaust his ad-

"VACATIONS
"1 week—First Year
"2 weeks—Second Year
"3 weeks—Fifth Year
"4 weeks—Twelfth Year
"Eligibility to be on the employee's anniversary date.
"Time off must be taken during the year of eligibility. No pay will be given in lieu of vacation time.
"No carry-over of vacation from one year to the next.
"Vacation must be scheduled and approved by Management four (4) weeks prior to start of vacation.
"Payment will be made at the employee's request, providing the anniversary date has past [sic] and providing advance notice, in writing, (through Department Manager) is given two weeks prior to payment request.
"Payment will be based on forty (40) hours at the current rate of pay.
"No prorating of vacation time."

[3]Some months later, Suastez was paid his vested share in the company's profit-sharing plan.

[4]The company's acting personnel director testified that approximately 300 people left the company's employ, for various reasons, in 1976 and 1977. None of these employees were paid pro rata vacation benefits.

[5]That section provides, "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."
Unless otherwise indicated, all statutory references are to the Labor Code.

ministrative remedies. Suastez then filed a claim for pro rata vacation benefits with the Labor Commissioner. The commissioner denied the claim.[6]

Suastez filed a second suit in the superior court. Plastic Dress-Up moved for summary judgment based on the parties' stipulations of fact and the transcript of the first hearing. Suastez, in turn, filed a cross-motion for summary judgment.

The trial court granted Suastez's motion, holding that section 227.3 required the company to pay Suastez the vacation pay due him "on the basis of time served." The court also awarded costs to Suastez. Plastic Dress-Up appeals from this decision.

## II.

Section 227.3 provides, in part, that whenever an employee is discharged "without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with ... [the] employer policy respecting eligibility or time served ...." It cautions further "that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination." The only issue raised by this appeal is when vacation time becomes "vested" under section 227.3.

The company argues that, under its vacation policy, employees are not eligible for any vacation pay unless they are still employed on the anniversary of the day they began work.[7] Employment on that date, the company contends, is a condition precedent to the "vesting" of vacation rights. Hence, employees terminated before their anniversary have no "vested vacation time" under the statute. For example, if an employee were terminated two days before his or her anniversary date, no vacation pay would be forthcoming even though the worker had been employed the previous 363 days.

---

[6]Interestingly, the Labor Commissioner now appears as amicus curiae urging acceptance of Suastez's position. At oral argument, counsel for the commissioner explained that the initial rejection of Suastez's claim was the result of a staff member's error.

[7]This interpretation of the company's policy is by no means the only reasonable one, for the written notice of benefits is both internally inconsistent and ambiguous. For example, although the notice provides that "No pay will be given in lieu of vacation time," its later statement that "Payment will be made at the employee's request ..." suggests that the company *was* willing to substitute pay in lieu of vacation time. In

Suastez counters that an annual paid vacation is earned by labor performed throughout the year, and "vests" as it is earned. Thus, he argues, an employee who works for some part of a year has a "vested" right to a proportionate share of his or her vacation pay.

When considering the meaning of the phrase "vested vacation time" as used in section 227.3, it is important to keep in mind the nature of vacation pay. ■ It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. (*People v. Bishopp* (1976) 56 Cal.App.3d Supp. 8, 11 [128 Cal.Rptr. 923]; see generally Giacomini, Advising Cal. Employers (Cont.Ed.Bar 1981) § 1.25, p. 23; 51 C.J.S., Labor Relations, § 243, p. 1078.) In an early, oft-cited case determining employees' rights to vacation pay under a collective bargaining agreement, Judge Augustus Hand wrote, "A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee." (*In re Wil-Low Cafeterias* (2d Cir. 1940) 111 F.2d 429, 432.) The consideration for an annual vacation is the employee's year-long labor. Only the time of receiving these "wages" is postponed. (*Ibid.*)

"Many tribunals have taken the view that vacation pay is simply an alternate form of wages, earned at the time of other wages, but whose receipt is delayed." (*Local U. No. 186, Packinghouse F. & A. Wkrs.* v. *Armour & Co.* (6th Cir. 1971) 446 F.2d 610, 612, cert. den., 405 U.S. 955 [31 L.Ed.2d 231, 92 S.Ct. 1170]; see, e.g., *Schneider* v. *Electric Auto-Lite Company* (6th Cir. 1972) 456 F.2d 366, 371; *United States* v. *Munro-Van Helms Company* (5th Cir. 1957) 243 F.2d 10, 13; *Valeo* v. *J. I. Case Co.* (1963) 18 Wis.2d 578, 583-587 [119 N.W.2d 384, 387-389], and cases cited therein.)

---

fact, the record shows that for three years Suastez opted to draw vacation pay instead of taking time off. Further, if the statement "No prorating of vacation time" is read together with "Time off must be taken during the year of eligibility," it could be interpreted to mean merely that an employee who was still on the payroll could not demand part of his vacation time in advance of his eligibility date. Section 227.3, of course, does not purport to limit an employer's right to control the scheduling of its employees' vacations. (See *Bonn* v. *California State University, Chico* (1979) 88 Cal.App.3d 985, 991-992 [152 Cal.Rptr. 267]; 48A Am.Jur.2d, Labor and Labor Relations, § 1825, p. 269.)

In light of this inconsistency and ambiguity, if this court were asked to interpret this notice, it might conclude that the company was obliged, by the terms of its own policy, to pay Suastez pro rata vacation pay. However, since Suastez does not contest the accuracy of the company's interpretation of the policy, that issue is not before this court.

This court, too, has adopted the view that vacation pay is simply a form of deferred compensation. "It would seem clear that the purpose of [providing vacation pay] is to offer a reward of additional wages for constant and continuous service. As Judge Magruder in *Goodall-Sanford, Inc.* v. *United Textile Workers* [(1st Cir. 1956)] 233 F.2d 104, pointed out, there is an 'increasingly complex use of compensation in the form of "fringe benefits," some types of which inherently are not payable until a time subsequent to the work which earned the benefits....' (233 F.2d at p. 110.)" (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 186 [14 Cal.Rptr. 297, 363 P.2d 313].)

In this respect, vacation pay is similar to pension or retirement benefits, another form of deferred compensation. Those benefits, too, "do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee." (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449].)

■ This court has never before considered the question of when vacation pay vests under section 227.3. It did, however, recently have occasion to review and reconsider when pension rights "vest." In *Miller* v. *State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970], this court held that "the right to pension benefits vests upon the acceptance of employment [citations], even though the right to immediate payment of a full pension may not mature until certain conditions are satisfied. As we stated in *Kern* [v. *City of Long Beach* (1947) 29 Cal.2d 848, 855], 'It is true that an employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer. [Citations.] He is not fully compensated upon receiving his salary payments because, in addition, he has then earned certain pension benefits, the payment of which is to be made at a future date.'" Although the right to a pension may still be, in whole or in part, subject to forfeiture upon the happening of certain contingencies, that does not prevent the right from vesting. (*Ibid.*)

Similarly, since the consideration for an annual vacation is the labor performed throughout the year, an employee whose employment is terminated midyear has not earned a full vacation. Nonetheless, the employee has earned *some* vacation rights "'as soon as he has performed substantial services for his employer'" (*Miller, supra*, 18 Cal.3d at p. 815, quoting *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848,

855 [179 P.2d 799]). The right to some share of vacation pay vests, like pension rights, on acceptance of employment. Nonperformance of a condition subsequent, such as Plastic Dress-Up's requirement that employees remain until their anniversary, can, at most, result in a forfeiture of the right to a vacation; it cannot prevent that right from vesting.

Courts in other jurisdictions which have considered whether discharged or striking employees have a "vested" right to a pro rata share of vacation pay have uniformly held that the right vests as services are rendered. "'It is beyond dispute that an agreement to pay vacation pay to employees made to them before they performed their services, and based upon length of service and time worked, is not a gratuity but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation.'" (*Livestock Feeds* v. *Local Union No. 1634* (1954) 221 Miss. 492, 502-503 [73 So.2d 128, 132], quoting *Textile Workers Union* v. *Paris Fabric Mills* (1952) 18 N.J. Super. 421 [87 A.2d 458, 459], affd. 22 N.J.Super. 381 [92 A.2d 40, 41]; accord *Valeo* v. *J. I. Case Co., supra*, 18 Wis.2d at pp. 585-586 [119 N.W.2d at p. 388]; see the discussion of the trend to grant vacation on a pro rata basis to laid-off employees in *Amalg. Butcher Workmen Loc. Un. No. 641* v. *Capitol Pack. Co.* (10th Cir. 1969) 413 F.2d 668, 672, fn. 5.) Like the California courts' treatment of pension rights, these courts sometimes caution that the right to a vacation, even if vested, may be forfeited if a condition subsequent is not met.[8]

If vacation pay "vests" as it is earned, the company's requirement of employment on an anniversary date cannot prevent the right to pay from vesting. At most, it is a condition subsequent which attempts to effect a forfeiture of vacation pay already vested. (Cf. *Miller* v. *State of California, supra*, 18 Cal.3d at pp. 815-817.) Under section 227.3, of course, such a forfeiture is forbidden: "an employment contract or employer policy *shall not* provide for forfeiture of vested vacation time upon termination." (Italics added.)

The company argues, though, that its eligibility requirement is not merely a condition subsequent that would effect a forfeiture of vested

---

[8]See, e.g., *Textile Workers Union* v. *Paris Fabric Mills* (1952) 22 N.J.Super. 381 [92 A.2d 40, 41]; *Briggs* v. *Electric Auto-Lite Co.* (1967) 37 Wis.2d 275, 279 [155 N.W.2d 32, 35].

vacation rights. Rather, Plastic Dress-Up characterizes it as a condition *precedent* that prevents those rights from vesting at all. In support of its contention, several California cases are cited which have enforced conditions like the one at issue here and labeled them conditions precedent. (See *Division Lab. L. Enfmt.* v. *Anaconda Min. Co.* (1955) 138 Cal. App.2d 92 [291 P.2d 169]; *Division Labor Law Enf.* v. *Standard Coil etc. Co.* (1955) 136 Cal.App.2d Supp. 919 [288 P.2d 637]; *Div. of Lab. L. Enf.* v. *Mayfair Mkts.* (1951) 102 Cal.App.2d Supp. 943 [227 P.2d 463].)

These cases, however, were decided before the enactment of section 227.3, and never considered the question of when and whether the right to vacation pay vested. They merely interpreted the language of the agreements before them.[9] In part, too, they relied on what is now an outdated notion of the nature of vacation pay. For example, in *Mayfair Markets* the court implied that vacation pay "was an inducement to the plaintiff to continue in defendant's employ, and was in fact a supplemental contract...." (*Div. of Labor L. Enf.* v. *Mayfair Mkts., supra,* 102 Cal.App.2d Supp. at p. 949.)

 If vacation pay served simply to induce employees to remain on the job for a certain period of time, then interpreting eligibility requirements as a condition precedent to the vesting of vacation pay would not be unreasonable. However, once it is acknowledged that vacation pay is not an inducement for future services, but is compensation for past services, the justification for demanding that employees remain for the entire year disappears. If some share of vacation pay is earned daily, it would be both inconsistent and inequitable to hold that employment on an arbitrary date is a condition precedent to the vesting of the right to such pay. (See *Brookford Mills* v. *Textile Workers Union of America* (1957) (Jaffe, Arb.) 28 Lab.Arb. 838, 841; Daykin, *Vacation Rights Under Collective Bargaining Agreements* (1962) 17 Arb.J. 34, 36.)

The language of section 227.3 does not support a contrary result. The company relies on this passage from the statute: "all vested vacation time shall be paid to [the employee] as wages at his final rate *in accordance with such contract of employment or employer policy respecting eligibility or time served ....*" (Italics added.) The company contends

---

[9]Additionally, although decisions of the appellate department have persuasive value, they are "of debatable strength as precedents," and "are not, of course, binding on ... the higher reviewing courts ...." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 671, p. 4584.)

that this passage is evidence of a legislative intent that the employer's policy determine the time of vesting. A careful reading of the statute, however, indicates that the passage only means that the *amount* of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy. The typical vacation policy provides that the amount of vacation time for which an employee is eligible depends on, among other things, the length of employment with the company and the title or position the employee holds. The Legislature has left the determination of these variables to the employer or the bargaining table. If the Legislature had intended the contract to control the time of vesting, it could easily have drafted the statute to compel such a result. It did not.

Finally, it is noted that further support for this interpretation of the statute may be found in the Legislature's 1976 amendment to section 227.3. (Stats. 1976, ch. 1041, § 2, p. 4653.) That amendment added this sentence: "The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."

Even before the enactment of section 227.3, California courts had applied the principles of equity and fairness to allow laid-off employees to recover pro rata vacation benefits in certain circumstances. Courts have allowed recovery for vacation pay despite the fact that contract eligibility requirements were not met, if the employee had substantially performed. (*Div. Labor L. Enf.* v. *Ryan Aero. Co.* (1951) 106 Cal.App.2d Supp. 833 [236 P.2d 236, 30 A.L.R.2d 347]; see *Division Labor L. Enf.* v. *Standard Coil etc. Co., supra,* 136 Cal.App.2d Supp. at pp. 924-925; *Div. of Lab. L. Enf.* v. *Mayfair Mkts., supra,* 102 Cal.App.2d Supp. at pp. 948-949; cf. *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 830 [152 Cal.Rptr. 98].)

This court has recognized that the "frustration of purpose" doctrine can also afford relief. "If the purpose of requiring employment on a certain date was to induce employees to remain in the employment, it may reasonably be argued that the purpose of the contingency was frustrated by the closing of the plant and the employees should be excused from performance of the condition precedent." (*Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d at p. 189.)[10] Thus, California courts have

[10]Other courts have also recognized the role of equity and justice. (See, e.g., *Livestock Feeds* v. *Local Union No. 1634, supra,* 221 Miss. at p. 506 [73 So.2d at p. 133]

already recognized that the principles of equity and justice weigh in favor of granting relief to employees who are denied payment for earned vacation pay.

### III.

The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation "vests" as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay.[11]

The judgment is affirmed.

Mosk, J., Richardson, J., Newman, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

Appellant's petition for a rehearing was denied September 22, 1982. Richardson, J., was of the opinion that the petition should be granted.

---

["It seems clear to us that if vacation pay is additional wages, the employee is, in justice and right, entitled to a pro-rata share thereof if the employment be earlier terminated by his employer"]; *Textile Workers Union of America v. Brookside Mills* (1957) 203 Tenn. 71, 78-79 [309 S.W.2d 371] ["fair dealing and common justice require that we affirm the ... holding that these complainants are entitled to vacation pay"].)

Affirming an arbitrator's award of vacation benefits to laid-off employees, one court noted, "'It is certain that vacation pay is a right which more often than otherwise survives the expiration of the agreement and "vests" in the employee as he goes about his chores from day to day. Where a plant has been shut down or the employer has gone out of business and the collective bargaining agreement has been terminated, courts, as well as arbitrators, tend to grant vacation on a pro rata basis for the period during which the employees have served notwithstanding the fact that they may not have met the requirement that they be in the employer's employ on a specific date. In some of these cases arbitrators have ... rationalized the result by holding that the employees were merely "laid off" and retained their rights as employees, or have interpreted the eligibility date merely as a "calculation date."' Labor Arbitration and Industrial Change, BNA, 1963, p. 198." (*Amalg. Butcher Workmen Loc. Un. No. 641 v. Capitol Pack. Co., supra*, 413 F.2d at p. 672, fn. 5.)

[11]As noted above, the statute provides that the amount of vacation pay earned shall be determined "in accordance with [the] contract of employment or employer policy respecting eligibility or time served ...." (§ 227.3.)