# UNITED STATES *v.* SWEENY.[1]

## APPEAL FROM THE COURT OF CLAIMS.

No. 889. Submitted March 5, 1895. — Decided March 25, 1895.

In computing the time of service which entitles an officer in the army to longevity pay, service in a volunteer regiment is not service " in the army of the United States " within the meaning of the 15th section of the act of July 5, 1838, c. 162, 5 Stat. 256.

THIS was a petition originally filed by Thomas W. Sweeny, brigadier-general on the retired list of the army, to recover the sum of $182.05, charged against him by the United States, as to which amount he was claimed to be in arrears, and paid by him under protest. The petitioner having died after the commencement of the action, the appellee was admitted to prosecute the claim, as administratrix.

The case was argued and submitted in May, 1893, and the petition dismissed. Claimant applied for a rehearing, which was granted, and the case again submitted and decided by a majority of the court in her favor. Judgment was thereupon entered in the sum of $182.05, and the court made a finding of facts, of which the following is a summary :

On December 3, 1846, Thomas W. Sweeny, appellee's intestate, being at that time a lieutenant in the Second New York Volunteers, was mustered into the military service of the United States, under the act of May 13, 1846, authorizing the President to accept the services of 50,000 volunteers for the prosecution of the existing war between the United States

---

[1] This case was commenced in the Court of Claims by a petition in which the plaintiff was styled " Sweeny." After his death his administratrix appeared under the same name. In the government's traverse the case was entitled *Sweeney* v. *United States*, and under that title went to judgment in the court below. The United States as appellants brought it here under the title of *United States* v. *Sweeney*, and under that title it went to judgment here. The name of the appellee is here restored to its original spelling.

and Mexico. He served in this capacity until March 17, 1848, when, having received a commission as second lieutenant in the Second United States Infantry, he was mustered into the regular service of the United States. Some time after March 3, 1853, five years from the date of his commission in the regular army, he charged for and was paid his first longevity ration for five years' prior service, under the act of July 5, 1838. In September, 1855, he charged, in his voucher for pay, one longevity ration for the period from December 4, 1851, (five years from his muster into the service *as a volunteer*,) to March 3, 1853, and was paid this item by the paymaster, October 15, 1855. The disbursement of this longevity ration from December 4, 1851, to March 3, 1853, was never approved or allowed by the accounting officers, but was disallowed by them upon the first examination of the paymaster's voucher. The matter was reported by the Secretary of War to the Second Comptroller, who, on July 4, 1856, filed a written opinion to the effect that the time spent in the military service as a volunteer under the act of May 13, 1846, could not be counted in the longevity rations under the act of July 5, 1838. In accordance with this decision, the voucher was disapproved by the Second Auditor and by the Second Comptroller, and the amount charged against Lieutenant Sweeny.

On August 31, 1857, he was paid the amount of the second longevity ration from December 3, 1856, to August 31, 1857, and after that date he was successively paid his second ration for the respective months down to February, 1858. But these payments were disallowed in due course by the accounting officers, and the appellee's intestate was again required to refund.

In 1892, he was informed that he was in arrears to the United States in the sum of $182.05, which he paid under protest, and subsequently began this suit to recover the amount so paid, upon the ground that he ought to have been credited with longevity rations due on account of his service as a volunteer in the Mexican war, the first two of which rations he had been required to refund, while the last two had never been paid to him.

*Mr. Assistant Attorney General Dodge* and *Mr. Charles C. Binney* for appellants.

*Mr. Joseph W. Stryker* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This case involves the question whether, in computing the time of service which entitles an officer to longevity pay, service in a volunteer regiment is service " in the army of the United States," within the meaning of the act of July 5, 1838, c. 162, 5 Stat. 256, the fifteenth section of which (p. 258) enacts " that every commissioned officer of the line or staff, exclusive of general officers, shall be entitled to receive one additional ration per diem for every five years he may have served or shall serve in the army of the United States."

Claimant was an officer of a New York volunteer regiment, and was mustered into the service of the United States December 3, 1846, and so remained until March 17, 1848, during the Mexican war, when he accepted a commission as second lieutenant in the regular army. After serving in the army of the United States five years, he became entitled to the extra ration provided by the act of 1838 ; and the question is, whether that term of five years began to run from the day he was first mustered into the service as a volunteer, or from the day he received his commission as a lieutenant in the regular army.

That the act of 1838 was passed with special reference to the regular army is evident, not only from the fact that there were no volunteers at that time in the service of the United States, but from the title of the act, " To increase the present military establishment of the United States, and for other purposes," and from its numerous provisions, all of which bore upon its manifest purpose to increase and reorganize the regular army. By the act of May 13, 1846, c. 16, 9 Stat. 9, a state of war was recognized to exist between the United States and Mexico, and for the purpose of prosecuting such war to a successful termination, the President was authorized to call for and accept the services of any number of volunteers,

not exceeding fifty thousand, to serve twelve months, or until the end of the war; by section 4, they were declared to be subject to the rules and articles of war, and in all respects, except as to clothing and pay, placed on the same footing with similar corps of the United States army; and in section 9, there was a further provision that they should have the organization of the army of the United States and the same pay and allowances. This act undoubtedly entitled the claimant to the same pay as a volunteer during his term of actual service that he would have received if he had been in the regular army; but it does not follow that, after his service was concluded and he was mustered out, such past service was intended to be recognized as a service in the army of the United States. The act, so far from amalgamating the volunteers and the regular army, distinguishes the two, and limits their identity to the receipt of the same pay and allowance. This is the more obvious from the very next act, passed upon the same day, which authorizes an increase of the rank and file of "the army of the United States" by voluntary enlistments. The first act dealt exclusively with the militia and volunteers; the second with the regular army.

Very little light is thrown upon the question by prior legislation. It is true that the Constitution provides that "the President shall be commander-in-chief of the army and navy of the United States, and of the militia of the several States, when called into the actual service of the United States." Nothing is said in this connection of volunteers; but the object of the provision is evidently to vest in the President the supreme command over all the military forces, — such supreme and undivided command as would be necessary to the prosecution of a successful war. The regular army dates its birth from the act of September 29, 1789, c. 25, 1 Stat. 95, which continued in the service of the United States a small military force, which had been held subject to the authority of Congress when the Constitution took effect. This act was superseded the following year by an act for regulating the military establishment, (act of April 30, 1790, c. 10, 1 Stat. 119,) but nothing was said with regard to volunteers until

May 28, 1798, when, in view of a possible war with France, the President was authorized to raise a provisional army of volunteers, who, when called into actual service, were to receive the same pay, rations, forage and emoluments of every kind, except bounty and clothing, as the other troops to be raised by the act. Act of May 28, 1798, c. 47, 1 Stat. 558. By subsequent acts, passed at different critical periods, the President was authorized to accept the services of volunteers, who, though treated while in actual service as a part of the army of the United States, were so considered only in a limited sense, and while in actual service.

Their time of service as such volunteers never seems to have been computed in estimating the five years, after which they were entitled to longevity rations, until the act of March 2, 1867, c. 159, 14 Stat. 434, entitled "An act declaring and fixing the rights of volunteers as a part of the army," the first section of which provided that "in computing the length of service of any officer of the army, in order to determine what allowance and payment of additional or longevity rations he is entitled to, . . . there shall be taken into account and credited to such officer whatever time he may have actually served, whether continuously or at different periods, as a commissioned officer of the United States, either in the regular army, or since the nineteenth day of April, eighteen hundred and sixty-one, in the volunteer service, either under appointment or commission from the governor of a State, or from the President of the United States."

It seems to us this act is decisive of the question. It provides in substance that, in estimating the length of service for the payment of longevity rations, he shall be credited both for his service as an officer of the regular army, or, since the nineteenth day of April, eighteen hundred and sixty-one, as an officer in the volunteer service. The object of the act was evidently, first, to extend to such volunteer officers as had served in the army since the breaking out of the civil war, the same privilege with respect to longevity rations as had, by the act of 1838, been already secured to officers of the regular army; and second, to limit that privilege to those

who had served since that date. If those who served before that date had been treated as entitled to longevity pay, the act was wholly unnecessary, as there was no question that, under the act of 1838, the officers of the regular army were so entitled; and the extension of the same privilege to officers of the volunteer army was evidently a new provision, and to be restricted to those who had served as such since the breaking out of the war. It is a plain case for the application of the maxim: *Expressio unius est exclusio alterius.* Had it been shown that, prior to the passage of this act, the practice of the department had been to estimate the length of an officer's service as a volunteer, in making up the five years' service entitling him to longevity pay, the act might have been construed to be in affirmance of the previous law; but, so far as the record of this case shows, the practice appears to have been the other way, and the act must be treated as establishing a new rule for such officers in the volunteer service after April 19, 1861.

The judgment of the court below must, therefore, be

*Reversed, and the case remanded to the Court of Claims with direction to dismiss the petition.*