[No. A098756. First Dist., Div. Five. Sept. 10, 2003.]

RAYMOND J. MASON et al., Plaintiffs and Appellants, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Respondents.

MUNICIPAL ATTORNEY'S ASSOCIATION et al., Plaintiffs and
Appellants, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Respondents.

J. THOMAS ALDANA et al., Plaintiffs and Appellants, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Respondents.

COUNSEL

Davis & Reno, Duane W. Reno; Carroll, Burdick & McDonough, Ronald Yank and Gregg McLean Adam for Plaintiffs and Appellants.

Meyers, Nave, Riback, Silver & Wilson, Arthur A. Hartinger and Andrea J. Saltzman for Defendants and Respondents.

OPINION

JONES, P. J.—Appellants in this action are individuals who are classified as "miscellaneous employees"[1] under three retirement plans set forth in the charter of the City and County of San Francisco. They and labor organizations representing some of them filed lawsuits challenging the methodology used by the Retirement Board of the City and County of San Francisco to calculate their retirement benefits. The trial court granted summary judgment to the board, ruling it had determined appellants' benefits correctly. Appellants contend the trial court misinterpreted San Francisco's charter and related city ordinances. We disagree and will affirm the judgment in favor of the board.

## I. FACTUAL AND PROCEDURAL BACKGROUND

San Francisco, like many public employers, offers its employees a pension plan. The plan is structured as a defined benefit plan under which San Francisco promises to pay retiring employees a certain sum of money each

---

[1] Miscellaneous employees are employees other than police officers and firefighters.

month for life. The precise amount is determined by a formula that takes into account the number of years the employee worked, his or her age at retirement, and the employee's "average final compensation."[2] Under this formula, "average final compensation" is critical when determining the amount to which an employee is entitled.

As San Francisco is a charter city, many of the laws that govern its retirement plan are set forth in the city's charter. Over the years, San Francisco has amended the charter's retirement provisions several times and has changed the way in which "average final compensation" and related terms are defined.

Three versions of the San Francisco charter's retirement provisions are at issue in this case. The first, described by appellants as the "old plan"[3] applies to workers hired prior to November 1, 1976. (See S.F. Charter, Appen., § A8.509 (hereafter Charter).) Under that plan, the term "average final compensation" is defined as, "the average monthly compensation earned by a member during any five consecutive years of credited service in the retirement system in which his average final compensation is the highest, unless the board of supervisors shall otherwise provide by ordinance enacted by three-fourths vote of all members of the board." (Charter, § A8.509.) Under the old plan, the term "compensation" is defined as "all remuneration whether in cash or by other allowances made by the city and county, for service qualifying for credit under this section." (Charter, § A8.509.)

The second plan is known as the "new plan."[4] (Charter, § A8.584.) It applies to workers who were hired after November 1, 1976, and through November 6, 2000. As is relevant here this plan defines "average final compensation" essentially the same as in the old plan, but specifies a different measuring period of credited service. Average final compensation is "the average monthly compensation earned by a member during any three consecutive years of credited service in the retirement system in which his average final compensation is the highest." (Charter, § A8.584-1.) The new plan defines "compensation" slightly differently from the definition in the old plan; "compensation" is "all remuneration whether in cash or by other

---

[2] For example, one of the plans at issue is sometimes described as the 2 percent at 60 plan. Under that plan, an employee who retires at age 60 after 30 years of service and whose average final compensation over the specified measuring period was $100,000, is entitled to $60,000 annually payable monthly (2% x 30 (years) x $100,000 (average final compensation).) A similar employee who retires at age 55 after 25 years of service and who had an average final compensation of $100,000 would be entitled to $37,500 annually paid monthly (1.5% x 25 x $100,000). (See S. F. Charter, Appen., § A8.509.)

[3] The board describes the "old plan" as "tier 1." We will follow appellants' naming convention.

[4] The board describes this plan as "tier 2."

allowances made by the city and county, for service qualifying for credit under this section, but excluding remuneration for overtime." (Charter, § A8.584-1.)

The third plan was adopted by San Francisco voters in the November 2000 election. (Charter, § A8.587.) Described by appellants as the "new-new-plan"[5] it covers employees who were hired after November 1, 1976, but who had not retired prior to November 7, 2000. Other than stating a third measuring period for credited service, the "new-new-plan" defines average final compensation similarly as "the average monthly compensation earned by a member during any one year of credited service in the retirement system in which his or her average final compensation is the highest." (Charter, § A8.587-1.) The plan expands the exclusions in the term "compensation" in setting forth yet a third definition of "compensation." In the new-new-plan, compensation is defined as "all remuneration whether in cash or by other allowances made by the city and county, for service qualifying for credit under this section, but excluding remuneration for overtime and such other forms of compensation excluded by the board of supervisors pursuant to Section A8.500 of the charter." (Charter, § A8.587.1.)

In addition to a pension, San Francisco offers its employees a vacation benefit. (Charter, § A8.440.) Employees may elect not to take their entire vacation allotment in any one year and may accumulate unused vacation up to a maximum of 30 days. (Charter, § A8.440.) When an employee retires, he or she may request a "cash payment" in lieu of unused vacation. (S.F. Admin. Code, § 16.13.) Payments under this provision are and may only be made after an employee retires.

San Francisco also offers its employees sick leave. As a general rule, unused sick leave terminates automatically when an employee retires. However, there is an exception for sick leave that was earned prior to December 1978. Under San Francisco's complex civil service rules, sick leave accrued prior to that date is defined as "vested" and it may be exchanged for cash when an employee retires. As with vacation, payments for vested sick leave are and may only be made after an employee retires.

San Francisco's retirement system is operated by the Retirement Board of the City and County of San Francisco (the Board), which is authorized to determine the benefits to which retired employees are entitled. (Charter, § 12.100.) For decades, the Board has followed a policy of *not* including payments made for unused vacation or sick leave (which the Board describes as "terminal pay") in its retirement calculations. This policy is motivated, at

---

[5] The board describes this plan as "new miscellaneous" or "tier 3."

least in part, by a desire to avoid "spiking" i.e., attempts by an employee to inflate a component of the retirement formula in order to receive higher retirement benefits over his or her lifetime. It seeks to avoid undermining the viability of the retirement trust fund, which could occur when a component of the formula is suddenly increased at the conclusion of an employee's service, thereby subjecting the retirement fund to unfunded liabilities.

The Board's policy of not including payments for unused vacation and sick leave from its retirement calculations was unchallenged for many years. That changed when our Supreme Court decided *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483 [66 Cal.Rptr.2d 304, 940 P.2d 891] (*Ventura*). The issue in *Ventura* was whether the Retirement Board of Ventura County had properly calculated the retirement benefits of county employees under the County Employee Retirement Law of 1937 (CERL). (See Gov. Code, § 31450 et seq.) (*Ventura, supra,* at p. 487.) The court analyzed the various sections of the law in question and ruled the retirement board had calculated benefits incorrectly.

Relying on the *Ventura* decision, appellants filed the complaints that are at issue in the present appeal. Three class action suits were filed. The first, entitled *Mason v. Retirement Board of the City and County of San Francisco,* sought relief on behalf of employees and retirees covered by the old plan. The second, entitled *Municipal Attorney's Association v. The Retirement Board of San Francisco,* was filed on behalf of attorneys employed by San Francisco. The third, entitled *Aldana v. The Retirement Board of the City and County of San Francisco,* sought relief on behalf of Municipal Railway employees. Each of the three actions is framed as a petition for writ of mandate and complaint for declaratory relief. The primary thrust of all three is the same. As amended, each complained the Board erred when calculating the employees' retirement benefits because it did not include cash payments for unused vacation and sick leave.

The trial court consolidated all three actions under the *Mason* number and title in March 2000. In November 2000, the voters of San Francisco amended the city's charter and adopted the "new-new-plan" that we have described above. By stipulation and order filed on March 7, 2001, the court certified the case as a class action covering potential claimants under all three plans.

The parties filed cross-motions for summary judgment. Appellants argued the Board was obligated to include the amount of cash paid for unused vacation and sick leave when calculating retirement benefits under the plain language of all three plans and under the reasoning of the *Ventura* decision. The Board countered that its long-term interpretation of the plans was entitled to substantial deference. The Board also argued its interpretation was supported by a series of ordinances that had been adopted by the San Francisco

Board of Supervisors which specifically excluded sick and vacation pay from retirement calculations. Finally, the Board submitted a declaration from its executive director, who stated that the additional benefits appellants were seeking would cost the retirement system more than $750 million. According to the director, this additional unfunded liability would "impair the integrity and financial viability of the Retirement System, and could in turn affect the financial stability of thousands of retirees and their dependents who rely on [it]."

On cross-motions for summary judgment, the trial court granted the Board's motion, concluding it was entitled to prevail as a matter of law. The court ruled, among other things, that terminal pay need not be included in the retirement calculation because it is only paid after an employee retires. The court also ruled the Board's long-standing interpretation of the plans was entitled to substantial deference, and was supported by numerous ordinances that had been adopted by the San Francisco Board of Supervisors.

After the court entered judgment in favor of the Board, appellants filed the present appeal.

## II. *DISCUSSION*

Appellants contend the trial court erred when it ruled the Board was not required to include the amount paid in lieu of unused vacation and sick leave when calculating their retirement benefits. According to appellants, the Board was obligated to include those benefits under the plain language of all three retirement plans.

The parties agree that appellants' argument raises an issue of statutory interpretation that this court must decide de novo on appeal. (See, e.g., *Alesi v. Board of Retirement* (2000) 84 Cal.App.4th 597, 601 [101 Cal.Rptr.2d 81].) Although the retirement plans are set forth in San Francisco's charter, the normal rules of statutory interpretation apply. (*Ibid.*) Our primary goal is to ascertain legislative, in this case voter, intent. (*Aquilino v. Marin County Employees' Retirement Assn.* (1998) 60 Cal.App.4th 1509, 1516 [70 Cal.Rptr.2d 870].) That intent should be determined, if possible, from the language of the statute at issue. (*Ibid.*) If, however, the statutory language does not provide a clear answer, we may turn to other rules of interpretation. (*Ibid.*)

The term "average final compensation" is defined in each plan as the "average monthly compensation earned" by a member "during" the period he or she is providing credited service in the retirement system. This definition makes clear that only compensation earned "during" the period when an

employee is providing credited service is included when determining "average final compensation." Under San Francisco's system, vacation and sick leave have no cash value while an employee is providing credited service. These benefits can only be exchanged for cash *after* an employee retires. Only after the contingency of retirement has occurred, will the lump-sum cash payments be issued. We conclude a benefit that has no cash value during the specified measuring period should not be included in retirement calculations.

Pointing to the charter's definition of another term, "compensation," appellants contend unused vacation and sick leave must be factored into retirement calculations. Each plan defines "compensation" as "all remuneration whether in cash or by *other allowances* made by the city and county, for service qualifying for credit ...." (Italics added.) According to appellants, unused vacation and sick leave are a type of "other allowance" the cash value of which must be included.

It is true that appellants earn vacation and sick leave while providing credited service. However, during the specified measuring period, that benefit is one of *time*. Until an employee retires, it has no cash value. We conclude the Board was not obligated to assign a value to and to include in the calculation of "average final compensation" a benefit that does not have a cash value during the specified measuring period; accrued, but unused, vacation and sick leave should not be included when calculating retirement benefits.

Our conclusion is supported by several rules of statutory construction. Foremost among them is the rule that courts must give great weight and respect to an administrative agency's interpretation of a statute governing its powers and responsibilities. (*County of Santa Barbara v. Connell* (1999) 72 Cal.App.4th 175, 185 [85 Cal.Rptr.2d 43].) Consistent administrative construction of a statute, especially when it originates with an agency that is charged with putting the statutory machinery into effect, is accorded great weight. (*Ibid.*) Such deference is particularly warranted when an agency's interpretation is of long standing. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) This rule is supported by practical considerations. "When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation." (*Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233].)

Here, the Board is the agency designated by San Francisco's charter to administer the city's retirement system. Acting in that capacity, the Board has,

for decades,[6] interpreted the language in the plans that we have quoted to mean that postretirement payments for unused vacation and sick leave need not be included in retirement calculations. That consistent and unvarying interpretation has never been formally challenged prior to the present suit. We conclude the Board's decades-long, consistent interpretation of the charter provisions is entitled to substantial deference.

We draw further support from the application of a second rule of construction. ▉ We do not interpret statutes (or charter provisions) in isolation. Rather, we must " 'construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*Ford & Vlahos v. ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1234 [36 Cal.Rptr.2d 464, 885 P.2d 877], quoting *Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].)

The charter provisions at issue are not the only laws that address whether unused vacation or sick leave must be included in retirement calculations. San Francisco's charter authorizes the San Francisco Board of Supervisors "to enact ... any and all ordinances necessary to carry into effect" the retirement provisions of the charter. (Charter, § A8.500.) In 1956, the board of supervisors enacted an ordinance that granted San Francisco employees the right to convert unused vacation into cash upon retirement. While the board of supervisors was willing to grant employees that new right, it anticipated that the amounts paid might affect employees' retirement benefits. Accordingly when in 1956 the board of supervisors adopted the ordinance granting employees the right to sell unused vacation upon retirement, at the same time, it adopted another ordinance that stated, "When the compensation of a member is a factor in any computation to be made under the Retirement System, there shall be excluded from such computation any compensation paid in lieu of vacation."

In 1981, the Board of Supervisors revised a successor to the ordinance it had adopted in 1956 to state explicitly that amounts paid upon retirement for sick leave are also excluded from retirement calculations.

The current version of these ordinances is set forth in San Francisco Administrative Code section 16.29-7.4, which expressly states: "When the compensation of a member is a factor in any computation to be made under the Retirement System, there shall be excluded from such computation any compensation paid in lieu of vacation or sick leave."

---

[6] The precise number of decades is unclear. In the court below, the Board said it had interpreted the language at issue the same way for nearly 50 years. Appellants do not dispute that estimation.

Thus, for nearly half a century, the San Francisco Board of Supervisors has adopted ordinances that are consistent with the Board's long-term interpretation of the retirement plans. We conclude these ordinances support the conclusion that the Board's interpretation is correct.

A third rule of construction is also relevant. A cardinal rule of construction is that statutes must be construed practically rather than technically, and interpreted in a way that will lead to wise policy rather than mischief or absurdity. (*Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 299 [91 Cal.Rptr.2d 479].) Furthermore, "consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Here, appellants advance an interpretation of the retirement plans that is inconsistent with the decades-old interpretation adopted by the agency charged with administering them, and is inconsistent with a half-century of ordinances adopted by San Francisco's Board of Supervisors. In doing so, appellants seek to impose an unfunded $750 million liability on the retirement system—an amount that is so great that it could impair the integrity of the system itself. We are reluctant to adopt such an interpretation unless clearly required.

The conclusion we reach is also consistent with very recent case law. One of the issues in *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 473 [1 Cal.Rptr.3d 790], was whether "termination pay" which was defined as "one-time cash payments made to plan members upon retirement for accrued but unused compensatory time, sick leave time, and vacation or holiday time" must be included when calculating the retirement benefits of county employees under CERL, set forth at Government Code section 31450 et seq. The court ruled that type of pay need not be included because " 'Where an employee cannot or does not elect to receive cash in lieu of the accrued time off prior to retirement, the benefit remains one of time rather than cash.' The right to a termination pay cash-out arises only upon retirement ... the right does not arise prior to retirement or during service." (*In re Retirement Cases,* at p. 475.)

The ruling in *In re Retirement Cases* is not directly applicable here because the court was construing different language set forth in CERL, a different statutory scheme. However the fundamental holding in *In re Retirement Cases*—that unused vacation and sick leave need not be included when calculating retirement benefits—is consistent with our holding. Thus under our ruling, employees in San Francisco will be treated similarly to county employees who work under analogous state statutes.

In sum, given the specific charter language at issue, the Board's longstanding interpretation, the entire statutory scheme, and the potentially grave

financial implications and practical import of the claim presented, we conclude the Board's interpretation of the retirement plans was correct. ▮ The trial court correctly ruled the Board was not obligated to include cash payments for unused vacation and sick leave when calculating retirement benefits under any of the plans at issue.

Appellants claim that vacation and sick leave must be included in retirement calculations under language contained in the *Ventura* decision. The *Ventura* court did rule that cash payments made to active employees in lieu of annual leave had to be included in retirement calculations. (*Ventura, supra,* 16 Cal.4th at pp. 497–498.) However, the payments at issue in *Ventura* were made *annually* while employees were still working. (*Id.* at p. 488.) The fact that payments made to an employee while he or she was working must be included in retirement calculations does not support the conclusion that payments that can be made only *after* an employee retires must also be included. Furthermore, the *Ventura* court was interpreting a different statutory scheme: the County Employee Retirement Law of 1937. This case is governed not by CERL, but by San Francisco's charter. As appellants admit in their brief, "[t]he differences in definitions from one retirement system to another can be very significant." The Supreme Court's statements in *Ventura* interpreting different statutes and a different set of facts are not controlling.

Next, appellants contend it would be inappropriate to defer to the Board's long-term interpretation, or to take into consideration the financial consequences of their claims, under language in the *Ventura* decision that states, "Nothing in this record suggests that the burden on the county fisc justifies either perpetuation of an erroneous construction of the applicable statutes or denying these plaintiffs the benefit of our decision." (*Ventura, supra,* 16 Cal.4th at p. 507.) We believe appellants have read too much into this passage. The statement itself makes clear that the court was limiting its comment to the record and the specific benefits under review. Furthermore, nothing in that statement suggests an intent to overrule the well established rule that a long-standing administrative interpretation is entitled to deference (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 13), or the rule that the consequences of an interpretation should be evaluated. (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.)

Appellants also contend the Board's interpretation is inconsistent with language in *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 779 [183 Cal.Rptr. 846, 647 P.2d 122] (*Suastez*), that states: "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.]" We have no quarrel with this language, which is binding on us in any event. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) However, the case is inapposite. The issue in *Suastez* was whether an employee who is terminated must be paid for

vested vacation. The court interpreted Labor Code section 227.3 and ruled such payment was required. (*Suastez, supra,* 31 Cal.3d at p. 784.) Here employees' rights at termination are not at issue, and no party contends that Labor Code section 227.3 applies. The language cited is not controlling.

Next, appellants contend the Board's interpretation violates the maxim, *expressio unius est exclusio alterius.* Specifically, appellants note that the "new plan" defines compensation as "all remuneration whether in cash or by other allowances made by the city and county, for service qualifying for credit under this section, *but excluding remuneration for overtime.*" (Italics added.) Appellants contend that since overtime is expressly excluded from the definition of compensation in the "new plan" no further exclusions can be implied. ██ The maxim appellants cite is not a "... magical incantation, nor does it refer to an immutable rule." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 351 [45 Cal.Rptr.2d 279, 902 P.2d 297].) It has many exceptions, one of which is that the maxim will not be applied where doing so would run counter to a well established rule. (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539, fn. 10 [147 Cal.Rptr. 157, 580 P.2d 657]; see also *Western U. Tel. Co. v. Superior Court* (1911) 15 Cal.App. 679, 696–697 [115 P. 1091]; *United States v. Sweeny* (1985) 157 U.S. 281, 286 [39 L.Ed. 702, 15 S.Ct. 608]; see also 2A Sutherland, Statutory Construction (6th ed. 2000 rev.) § 47:25, pp. 330–331.) Here the well established and long-standing rule applied in San Francisco was to exclude vacation and sick leave from retirement calculations. Against this background, we conclude the Board was not required to include cash paid in lieu of unused vacation and sick leave in its retirement calculations even though those benefits were not expressly excluded under the "new plan" language.

Next, appellants contend Board could not validly rely on San Francisco Administrative Code section 16.29-7.4 or any of its predecessors to exclude vacation and sick pay from retirement calculations because all of those ordinances were enacted improperly. The Board first acted to exclude vacation from retirement calculations in 1956. Section 16.29-7.4 has existed in its current form since 1981. ██ A challenge to the validity of an ordinance must normally be brought within three years. (Code Civ. Proc., § 338, subd. (a); see *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 [107 Cal.Rptr.2d 369, 23 P.3d 601].) The time for challenging the ordinances has long since passed. (Cf. *Morgan v. Community Redevelopment Agency* (1991) 231 Cal.App.3d 243, 263 [284 Cal.Rptr. 745].) In any event, we do not hold that the Board could validly exclude vacation and sick leave from retirement calculations under the authority granted by San Francisco Administrative Code section 16.29-7.4 or its predecessors. Rather, we conclude the Board acted properly under the language of the charter provisions, and under the Board's long-term interpretation of that language. Section 16.29-7.4 and its predecessors are relevant only because

they inform our interpretation of the charter provisions at issue and support our conclusion the Board's long-standing interpretation is correct. We simply need not decide whether section 16.29-7.4 or its predecessors independently authorized the actions taken by the Board.

Finally, appellants note that the "new plan" defines compensation as "all remuneration whether in cash or by other allowances made by the city and county, for service qualifying for credit under this section, but excluding remuneration for overtime"; in contrast the "new-new-plan" adopted by the voters in San Francisco in November 2000 defines compensation as "all remuneration whether in cash or by other allowances made by the city and county, for service qualifying for credit under this section, but excluding remuneration for overtime *and such other forms of compensation excluded by the Board of Supervisors pursuant to section A8.500 of the Charter.*" (Italics added.) Appellants contend the expansion of the exclusion in the "new-new-plan" must be viewed as a change in the law, and therefore, that the board of supervisors must have lacked the power to enact an ordinance that excludes items from retirement calculations prior to the date on which the "new-new-plan" was enacted. Again, we need not resolve this issue directly because we do not hold the Board properly excluded vacation and sick leave from retirement calculations under authority granted by San Francisco Administrative Code section 16.29-7.4 or any of its predecessors. Whether those ordinances authorized the action taken, and when that power became effective, are issues we need not decide.

## III. *DISPOSITION*

The judgment is affirmed.

Simons, J., and Gemello, J., concurred.

A petition for a rehearing was denied October 6, 2003, and the petition of all appellants for review by the Supreme Court was denied December 10, 2003.