[No. B207719. Second Dist., Div. Two. June 29, 2009.]

LISA OWEN, Plaintiff and Appellant, v.
MACY'S, INC., Defendant and Respondent.

## COUNSEL

Clark & Markham, David R. Markham, James M. Treglio; United Employees Law Group and Walter Haines for Plaintiff and Appellant.

Law Offices of Julia Azrael, John S. Curtis; and David E. Martin for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—An employer is entitled to adopt a policy specifying "the *amount* of vacation pay an employee is entitled to be paid as wages," depending on length of service. (*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 783 [183 Cal.Rptr. 846, 647 P.2d 122] (*Suastez*).) The law permits an employer to offer new employees *no* vacation time: If an express written company policy forewarns new employees that their compensation package does not include paid vacation during their initial employment, then no vacation pay is earned and none is vested. When such a policy is in place,

as it is in this appeal, employees cannot claim any right to vested vacation during their initial employment, because they know in advance that they will not earn or vest vacation pay during this period. The trial court correctly determined that plaintiff was not unlawfully denied vacation pay when her employment ended.

## FACTS

Appellant Lisa Owen began working as a sales associate at a Robinsons-May department store (Robinsons) in 1990. In August 2005, Robinsons was acquired by respondent Macy's, Inc. (For ease of reference, respondent will be called Robinsons throughout this opinion.) In January 2006, employees at the Robinsons in Arcadia where Owen worked were notified that the store would be permanently closed—and their jobs eliminated—by April 2006. Owen filled out a "career interest form" indicating that she was not interested in job placement at a Macy's department store. The Arcadia Robinsons closed on March 18, 2006. After the closure, Owen "was doing stuff" around the store, though there were other people "that didn't do anything and sat around all day." Owen's employment at Robinsons ended on April 14, 2006. Her separation summary shows that she was not credited with any unused vacation pay, but received $12,469 in severance and other pay, based on her years of service.

In July 2006, Owen filed suit alleging that Robinsons failed to pay her accrued, vested vacation compensation, in violation of the Labor Code. Owen also alleged that Robinsons's conduct was an unlawful business practice, in violation of the Business and Professions Code. In an amended pleading, she added a claim for breach of the implied covenant of good faith and fair dealing. The lawsuit is styled as a class action on behalf of all similarly situated Robinsons employees.[1]

The Robinsons employee handbook provides that "All eligible associates earn and vest in paid vacation <u>after they have completed six months of continuous employment</u>. The vacation year is May 1 through April 30. <u>Vacation is earned in the same vacation year that it accrues and vests</u>." The handbook specifies that "Associates whose employment terminates for any reason other than retirement will receive all vested but unused vacation."

Thus, Robinsons imposes a six-month waiting period before new employees begin to earn vacation.[2] The employee handbook states that "Associates

---

[1] On appeal, Owen's brief focuses solely on the alleged Labor Code violation. Her other claims have been abandoned, so we need not address them.

[2] The "waiting period" for vacation time is not the same as a "probationary period." The Robinsons employee handbook contains a 90-day probationary period during which time an

who have completed at least six months of continuous service as of May 1 and who have worked at least 1000 hours during the prior vacation year will be eligible for paid vacation . . . ." The amount of vacation time depends on the employee's length of service with Robinsons. Employees who have worked for six months to one year receive a prorated amount of vacation, i.e., several days. Someone who worked at Robinsons for five months then quit to take another job would not earn or vest in vacation time.

The Robinsons handbook states that "Beginning each May 1, you accrue and vest in up to 50% of your annual vacation amount and on August 1, you accrue and vest in up to [the remaining] 50% of your annual vacation amount." According to a former Robinsons executive, this last provision means that employees' annual vacation vested before it was actually earned. The executive testified that in some companies, employees earn vacation as each month passes. At Robinsons, the company assumed that the employee would remain employed the entire year. Proceeding "on good faith," Robinsons gave the employee an entire year's vacation by August 1, "even though you hadn't worked through that new vacation year yet." Thus, the entire vacation vests prior to an employee's earning his or her full entitlement. However, employees who leave on or before April 30 of any given year would not receive the first half of their vacation entitlement for the vacation year beginning May 1.

Owen testified that she took all three weeks of the vacation time to which she was entitled during the vacation years running from May 1 to April 30 in 2002–2003; 2003–2004; 2004–2005; and 2005–2006. Inconsistently, her declaration states, "I . . . took none of the vacation time or pay I earned by working between May 1, 2005 and my termination date of April 14, 2006." Owen claims that she is entitled to four weeks of vacation pay for the vacation period running from May 1, 2006, to April 30, 2007 (i.e., *after* her job ended).

Owen was asked in a deposition, "And why did you conclude in your mind that you were entitled to four weeks for this May 1, 2006, to April 30, 2007, vacation?" She replied, "I don't know how—I don't know why." When pressed, she said, "I just felt we were entitled to it," adding, "Why wouldn't they just keep us for another two weeks to get our vacation pay?" Some Robinsons employees in the corporate office were fortunate enough to remain on the company payroll until May 1, 2006, and received vacation pay for the vacation year starting on May 1, 2006.

Robinsons brought a motion for summary judgment, arguing that Owen's claims fail as a matter of law because she was not denied any accrued

employee who fails to meet company standards or violates company policy may be discharged. The probationary period addresses employee behavior, not entitlement to vacation.

vacation benefits, and the company took no action to deprive her of vacation benefits by terminating her employment only two weeks before the 2006–2007 vacation year began, while allowing corporate office employees to remain on the job until May 1. Owen opposed the motion, arguing that Robinsons violated state law by imposing a six-month waiting period on new employees before vacation benefits began, and by requiring her to forfeit vacation pay for 2006–2007, pay which she believes she earned during the preceding year. Finally, she argued that Robinsons deliberately timed her layoff date to prevent her from receiving vacation pay on May 1.

## THE TRIAL COURT'S RULING

In its ruling, the trial court acknowledged the parties' polar positions: Robinsons believes that under its policy, vacation vests *before* it is earned, while Owen believes that vacation vests *after* it is earned. The court acknowledged that state law prohibits a "use it or lose it" policy with respect to vacation pay: if an employer offers vacation benefits, it is required to pay for all vested vacation upon termination of employment. The court rejected Owen's contention that an employer must offer vacation benefits from the first day of employment because state law does not "dictate[] the point at which a company providing vacation benefits must begin to provide them." The employer "is free to determine when an employee becomes eligible for vacation benefits so long as eligibility and vesting occur simultaneously." Thus, a "waiting period" for vacation benefits to accrue and vest is permissible.

The court granted Robinsons's motion for summary judgment. Judgment was entered in favor of Robinsons. A timely appeal was taken from the judgment.

## DISCUSSION

1. *Appeal and Review*

The judgment for respondent is final and appealable. (Code Civ. Proc., § 437c, subd. (m)(1).) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Review is de novo. (*Kahn v. East*

*Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

### 2. *Overview of Labor Code Section 227.3*

Owen's case is predicated on a violation of Labor Code section 227.3. The statute provides: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."

■ On its face, Labor Code section 227.3 does not require that an employer provide its employees with any paid vacation at all, contractually or as a matter of policy, as part of the employee compensation package. Rather, the statute states that "whenever" an employer provides vacation benefits, certain requirements must be met when the employment terminates. The law "does not require that an employer include a paid vacation as a portion of his employee's compensation; however, if he does, he is not free to reclaim it after it has been earned." (*Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 5 [272 Cal.Rptr. 134].) Plaintiff's counsel conceded that "As I understand the law, Your Honor, there is no requirement of vacation." Thus, there is no dispute, at the outset, that an employer may offer its employees no vacation time, if the employer so chooses.

■ The Supreme Court applied Labor Code section 227.3 in *Suastez*. The court wrote that paid vacation "is not a gratuity or a gift, but is, in effect, additional wages for services performed," or a "form of deferred compensation." (*Suastez, supra,* 31 Cal.3d at pp. 779–780.) The court analogized vacation benefits to pension or retirement benefits. Pension rights vest " 'upon the acceptance of employment.' " (*Id.* at p. 780.) Continuing the analogy, the court stated that an employee "has earned *some* vacation rights ' "as soon as he has performed substantial services for his employer." ' " (*Ibid.,* quoting two pension cases, *Miller v. State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970], and *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799].) The court added, "[t]he right to some share

of vacation pay vests, like pension rights, on acceptance of employment." (*Suastez, supra*, 31 Cal.3d at p. 781.)

Moving to the language of Labor Code section 227.3, the court interpreted the statutory mandate that " 'all vested vacation time shall be paid [to the employee] as wages at his final rate *in accordance with such contract of employment or employer policy respecting eligibility or time served . . . .' "* (*Suastez, supra*, 31 Cal.3d at p. 782, quoting § 227.3.) The court explained that the quoted "passage only means that the *amount* of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy. The typical vacation policy provides that the amount of vacation time for which an employee is eligible depends on, among other things, the length of employment with the company and the title or position the employee holds. The Legislature has left the determination of these variables to the employer or the bargaining table. If the Legislature had intended the contract to control the time of vesting, it could easily have drafted the statute to compel such a result. It did not." (*Suastez*, at p. 783.) The primary rule to be extracted from *Suastez* is that vacation pay vests as it is earned, under Labor Code section 227.3.

## 3. *An Employer May Refuse to Offer Paid Vacation to New Employees*

At the heart of Owen's objections is Robinsons's policy declaring that a new employee earns no vacation time during the first six months of employment. Employees who have worked for Robinsons for six months to one year earn and vest in vacation time on a prorated basis. In Owen's view, *Suastez* requires that an employee be credited with vacation time starting from the very first day of employment. As a result, Owen reasons, Robinsons's initial six-month waiting period—during which an employee earns zero vacation credit—is unlawful.

Owen agrees that under *Suastez*, the amount of vacation pay that an employee is entitled to be paid as wages is established by company policy. (*Suastez, supra*, 31 Cal.3d at p. 783.) In *Suastez*, the employer's written vacation policy was "1 week—First Year," followed by "2 weeks—Second Year," and so on. (*Id.* at p. 776, fn. 2.) The implication to be derived from the employer's policy in *Suastez* is that the employee began earning a fraction of one week's vacation pay from the very first day of work, until a full week of vacation accrued at the end of the employee's first year. Although vacation time was fractionally earned on a daily basis starting from day one in *Suastez*, none of it vested until the end of the employee's first year, under the employer's policy.

In the situation described in *Suastez*, "prorated vacation benefits must be paid on termination of employment even in cases where employees do not meet prerequisites of the employer's policy, such as attaining a full year of employment. . . . After *Suastez*, certain types of vacation pay policies which were formerly permissible, such as policies allowing the forfeiture of vacation pay before one full year of service or which required employees to 'use or lose' vacation pay by a specific date, were prohibited." (*Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 481 [18 Cal.Rptr.2d 198], citation omitted.)

The Robinsons vacation policy is distinguishable from the policy described in *Suastez*. Unlike the policy in *Suastez*, which unequivocally provided that an employee would earn a one-week vacation during the "first year" of employment (i.e., starting on day one of the employment), it is clear from the Robinsons employee handbook that the amount of vacation time earned during the first six months of employment is zero. After the first six months, the employee earns, accrues and vests in a small amount of vacation time. Thus, Robinsons's policy excludes vacation benefits at first, followed by a small amount of vacation pay earned after the initial six-month period; it is not a "1 week—First Year" policy, as in *Suastez*.

■ As stated in *Suastez*, "the *amount* of vacation pay an employee is entitled to" is determined by company policy, and that amount depends on "the length of employment with the company and the title or position the employee holds." (*Suastez, supra*, 31 Cal.3d at p. 783.) A company policy specifying that no vacation is earned during the first six months of employment is permissible under *Suastez*. In this instance, Robinsons's written policy specifies that the employee compensation package does not include vacation time starting from the first day of employment. Any prospective employee reading Robinsons's handbook would understand that he or she will not earn vacation pay as part of the compensation package for the first six months. By making it clear in advance that vacation is not part of a new employee's compensation, Robinsons does not run afoul of the rule that prohibits an employer from reducing an employee's wages for services after the service has been performed.

By way of analogy, the courts have approved employer vacation policies that warn employees, in advance, that they will cease to accrue vacation time accumulated in excess of an announced limit. "[I]f the employment agreement precludes an employee from accruing more vacation time after accumulating a specified amount of unused vacation time (a 'no additional accrual' policy), the employee does not forfeit vested vacation pay. A 'no additional

accrual' policy simply provides for paid vacation as part of the compensation package until a maximum amount of vacation is accrued. The policy, however, does not provide for paid vacation as part of the compensation package while accrued, unused vacation remains at the maximum. Since no more vacation is earned, no more vests. A 'no additional accrual' policy, therefore, does not attempt an illegal forfeiture of vested vacation." (*Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1602 [8 Cal.Rptr.2d 600]; accord, *Henry v. Amrol, Inc., supra,* 222 Cal.App.3d at p. Supp. 5 [the law does not prevent an employer from "announcing a level beyond which additional vacation time would no longer accrue. This would prevent additional vacation from vesting after a certain level had been reached."]; see also *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2007) 154 Cal.App.4th 1536, 1547 [65 Cal.Rptr.3d 665], in which this court approved a written contract that was "a species of 'no further accrual' " vacation policy for employees who had earned an excess of vacation time.)

If an employer's written vacation policy may legitimately prevent an employee from earning additional vacation compensation well into the course of the employee's career, when the employee has "maxed out" on unused vacation time—without causing an illegal forfeiture of vested vacation—then the opposite is equally true. The employer's written vacation policy may legitimately prevent a new employee from earning any vacation time at all, just as the policy may deny long-term employees any further vacation time. In effect, these written policies forewarn employees that if they begin a career at these companies, (1) they will not earn any vacation time during the first six months, and they will not vest in or forfeit any vacation compensation if they leave during that initial period, but they will earn and vest in vacation time after six months and (2) if they choose to continue their career at these companies, they will earn vacation up to a certain maximum amount, but if they continue to work after reaching this maximum, they will not be compensated for or vest in additional vacation time.

■ In short, "No case has held that what will happen or vest in the future has already somehow become vested or accrued in the present. The rule against forfeiture of *accrued* vacation rights, by its own terms, cannot apply to vacation pay which is to be earned in the future, i.e., which has not yet accrued." (*Kistler v. Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326, 1334 [19 Cal.Rptr.2d 417].) This statement applies equally to new employees who can expect to earn future vacation compensation (after a waiting period) and to established employees who have earned too much unused vacation time and will not earn more in the future. When no vacation

is earned, none vests. (*Boothby v. Atlas Mechanical, Inc., supra*, 6 Cal.App.4th at p. 1602.)

### 4. *Owen Did Not Earn Vacation in Advance of the Vacation Year*

In Owen's view, she earned her vacation *in advance* of the "vacation year" beginning on May 1, because Robinsons improperly failed to credit her and other employees with vacation time starting from their very first day on the job. As a result, she reasons, an employee who leaves on April 29 forfeits vacation compensation that was earned during the preceding year. Owen's view is mistaken.

As discussed above, Robinsons's written policy legitimately prohibited new employees from earning any amount of vacation for the first six months. After the first six months, employees earn a small amount of prorated vacation, until May 1 arrived. At that point, a junior associate would accrue 50 percent of a one-week annual vacation, and the other 50 percent would accrue on August 1. The only event that occurred "in advance" was the rate at which vacation accrued. Instead of having to wait for the weeklong vacation to slowly accrue while being earned by the employee between May 1 and April 30, the employee could promptly take the entire vacation in August. If the employee quit in September, after taking the full vacation, the employee would take advantage of Robinsons, by using up vacation time that had not yet been earned.

During her deposition, Owen acknowledged that she took all three weeks of the vacation time to which she was entitled between May 1, 2005, and April 30, 2006. She had difficulty expressing why she felt entitled to four weeks of vacation for the vacation year starting May 1, 2006, when her employment ended on April 14, 2006. Finally, she asked, "Why wouldn't they just keep us for another two weeks to get our vacation pay?" In effect, Owen wants to be paid for a vacation year (May 1, 2006–April 30, 2007) during which she did not work for Robinsons or earn any vacation time. Owen was given substantial separation pay. She is not entitled to vacation pay for a year in which she did not work for her employer.

## DISPOSITION

The judgment is affirmed. Each side to bear its own costs on appeal.

Doi Todd, J., and Chavez, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 2009, S175341.