Filed 7/28/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATHAN MINNICK, | D070555 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00014095- CU-OE-CTL) |
| AUTOMOTIVE CREATIONS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine Bacal, Judge.  Affirmed.

Law Offices of Kenneth A. Goldman and Kenneth Alan Goldman; Law Offices of Ari Moss and Ari Emanuel Moss; Law Offices of Zorik Mooradian and Zorik Mooradian for Plaintiff and Appellant.

Slattery Sobel & Decamp, J. L. Sean Slattery and Azar M. Khazian; Law Office of David P. Hall and David P. Hall for Defendants and Respondents.

Nathan Minnick sued his former joint employers, Automobile Creations, Inc. and Dynamic Auto Images, Inc. (defendants), alleging their vacation policy violated state law

because it required employees who worked for less than one year to forfeit vested vacation pay. Minnick brought the action individually and on behalf of all similarly situated employees, and sought penalties under California's Labor Code Private Attorney General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.).

The court sustained defendants' demurrer without leave to amend on Minnick's second amended complaint. We affirm. Defendants' vacation policy lawfully provided that employees do not begin to earn vacation time until after their first year. Because Minnick's employment ended during his first year, he did not have any vested or accrued vacation pay. Thus, he was not owed any vacation wages. (See *Owen v. Macy's, Inc.* (2009) 175 Cal.App.4th 462 (*Owen*).)

FACTUAL AND PROCEDURAL SUMMARY

Defendants operate automobile-related businesses throughout California. At the relevant times, defendants' vacation policy provided that an employee's vacation benefit begins to accrue *after* the end of the employee's first year. The written policy stated in part:

> "In order that we all have the same understanding regarding vacation accrual, eligibility, use and payout, as well as sick days and paid holidays, I wanted to clarify [the] policy regarding each of these.
>
> "All employees earn 1 week of vacation after completion of one year service and a maximum of two weeks' vacation after two years of service. This means that after you have completed your first anniversary with the company, you are entitled to take one week of paid vacation, and after the completion of two years service, you will accrue two weeks paid vacation per year. This does not mean that

---

[1]     All unspecified statutory references are to the Labor Code.

2

you earn or accrue 1/12th of one week's vacation accrual each month during your first year. You must complete one year of service with the company to be entitled to one week vacation." (Italics in original.)

The policy also provided: "Upon termination of employment, all accrued but unused vacation time (PTO) will be paid on the employees' final check at his or her final rate of pay."

Minnick worked for defendants for six months, from about June 2014 through December 2014. Consistent with their written vacation policy, defendants did not pay Minnick any vacation wages in his final paycheck because he had been employed for less than one year.

Minnick then sued for recovery of his vacation wages. In his second amended complaint, Minnick alleged defendants' failure to pay vacation wages violated California law requiring an employer to compensate employees for vested unused vacation time at the termination of the employment relationship. (See § 227.3; *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 779 (*Suastez*)). Minnick asserted three causes of action: (1) failure to pay all wages upon employment termination (§§ 201, 202); (2) violation of California's unfair competition law; and (3) entitlement to civil penalties under PAGA.[2]

Defendants demurred, arguing each of Minnick's causes of action required that he establish their vacation policy is unlawful, and he cannot make this showing because the policy unambiguously states that no vacation time is *earned* during the first year of

---

[2]     Minnick labels defendants' policy as "cliff-vesting," which Minnick says is the phrase "commonly" used to refer to the withholding of vested vacation pay. Minnick does not cite to any case or secondary authority using the phrase in this context.

employment. Defendants relied on *Owen*, which held that an employer may lawfully adopt a policy providing that employees do not *earn* vacation time for a specified period at the beginning of their employment. (*Owen, supra*, 175 Cal.App.4th at pp. 464-465.) Under *Owen*, if vacation pay is not earned, it is not vested, and therefore there is no entitlement to vacation pay at termination of the employment relationship. (*Id.* at pp. 468-472; see *Suastez, supra*, 31 Cal.3d at pp. 779-784 [*vested* vacation time cannot be forfeited].)

At the hearing on the demurrer, the court said it found the case indistinguishable from *Owen* and therefore Minnick did not state a cause of action under California law. The court then asked Minnick's counsel to identify facts that would support a viable amendment. Minnick's counsel responded by referring to the company's "application of the [vacation] policy" and said the policy "looks backward to work that has been performed . . . in order to be qualified for the [vacation benefit] . . . ." The court denied leave to amend, finding this proposed amendment "wouldn't change the Court's ruling."

The court sustained the demurrer without leave to amend, and entered judgment in defendants' favor. Minnick appeals.

## DISCUSSION

### I. *Review Standard*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the 'reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.' [Citation.] It 'is error for a trial court to sustain a demurrer [if] the plaintiff has stated a

4

cause of action under any possible legal theory.' [Citation.] We apply a de novo standard in reviewing the court's ruling sustaining the demurrer." (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 389.)

In evaluating the court's refusal to permit an amendment, we are governed by an abuse-of-discretion review standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects. (*Ibid*.) The appellant has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action. (*Ibid.*) An appellant can meet this burden by identifying new facts or theories on appeal. (Code Civ. Proc., § 472c, subd. (a); *Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1044.)

## II. *Applicable Law*

Section 227.3 governs the vesting of vacation wages. It states: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. . . ."

Interpreting this statute more than 30 years ago, the California Supreme Court held that "[o]nce vested," the right to vacation pay is protected and may not be forfeited.

(*Suastez, supra*, 31 Cal.3d at p. 784.)  The high court additionally held that vacation pay is vested as it is "earned."  (*Id.* at pp. 780-781.)  The court reasoned that vacation time "is not a gratuity or a gift, but is, in effect, additional wages for services performed."  (*Id.* at pp. 779, 781.)  Pay for vacation time, similar to pension or retirement benefits, "is simply a form of deferred compensation."  (*Id.* at 780.)  Thus, although California law does not require an employer to provide its employees with any paid vacation, if an employer chooses to include paid vacation as a portion of the employee's compensation, the employer is not free to reclaim it after it has been earned.  (*Id.* at p. 784.)

Applying these principles, *Suastez* held the defendant employer violated California law by refusing to pay its employee for a pro rata share of his vacation pay earned during the year his employment was terminated.  (*Suastez, supra*, 31 Cal.4th at pp. 776-777, 784.)  The *Suastez* employer's vacation policy provided for one week of vacation in the "First Year"; two weeks of vacation in the "Second Year"; and three weeks in the "Fifth Year."[3]  (*Id.* at pp. 776-777, fn. 2.)  The policy stated that " '[e]ligibility [is] to be on the employee's anniversary date.' "  (*Id.* at p. 777, fn. 2.)  The plaintiff worked for the employer from October 1972 until July 1978.  (*Id.* at p. 776.)  When he was terminated in July 1978, the employee requested a pro rata share of his vacation pay for the nine-month period from his anniversary date (October 1977) through his termination date (July 1978).  (*Id.* at p. 777.)  The employer refused, citing its policy that eligibility for vacation

---

[3]     This portion of the policy stated:  "1 week—First Year [¶] 2 weeks—Second Year [¶] 3 weeks—Fifth Year [¶] 4 weeks—Twelfth Year."  (*Suastez, supra*, 31 Cal.3d at p. 777, fn. 2.)

is on the employee's "anniversary date," and concluding the employee was not entitled to vacation pay for his final year because he left before his anniversary date. (*Ibid.*) The employer thus found the employee had forfeited his vacation pay for his final year. (*Ibid.*)

The *Suastez* court held this forfeiture was unlawful, reasoning: "If vacation pay 'vests' as it is earned, the company's requirement of employment on an anniversary date cannot prevent the right to pay from vesting. At most, it is a condition subsequent which attempts to effect a forfeiture of vacation pay already vested. [Citation.] Under section 227.3, . . . such a forfeiture is forbidden: 'an employment contract or employer policy *shall not* provide for forfeiture of vested vacation time upon termination.' " (*Suastez, supra*, 31 Cal.3d at p. 781.)

In *Owen*, the issue was whether *Suastez*'s rule against vested vacation pay forfeiture prohibits an employer from establishing a policy that an employee does not *accrue* vacation rights until he or she has worked for a specified period. (*Owen, supra*, 175 Cal.App.4th at pp. 464-465.) There, the employee handbook imposed a "six-month waiting period before new employees begin to earn vacation." (*Id.* at p. 465.) The policy stated: " 'All eligible associates earn and vest in paid vacations <u>after they have completed six months of continuous employment</u>. The vacation year is May 1 through April 30. <u>Vacation is earned in the same vacation year that it accrues and vests</u>.' " (*Ibid.*)

The *Owen* plaintiff argued that "*Suastez* requires that an employee be credited with vacation time starting from the very first day of employment. As a result, . . . [the employer's] initial six-month waiting period—during which an employee earns zero

vacation credit—is unlawful." (*Owen, supra*, 175 Cal.App.4th at p. 469.) The Court of Appeal rejected the argument, stating the employer's "vacation policy is distinguishable from the policy described in *Suastez*. Unlike the policy in *Suastez*, which unequivocally provided that an employee would earn a one-week vacation during the 'first year' of employment (i.e., starting on day one of the employment), it is clear from the . . . employee handbook that the amount of vacation time earned during the first six months of employment is zero. After the first six months, the employee earns, accrues and vests in a small amount of vacation time. Thus, [this] policy . . . is not a '1 week—First Year' policy, as in *Suastez*." (*Id.* at p. 470.)

Based on this analysis, the *Owen* court determined that "[a] company policy specifying that no vacation is earned during the first six months of employment is permissible . . . . Any prospective employee reading [the employment] handbook would understand that he or she will not earn vacation pay as part of the compensation package for the first six months. By making it clear in advance that vacation is not part of a new employee's compensation, [an employer] does not run afoul of the rule that prohibits an employer from reducing an employee's wages for services after the service has been performed." (*Owen, supra*, 175 Cal.App.4th at p. 470.)

The *Owen* court additionally supported its conclusion by analogizing to the decisions in which the courts "have approved employer vacation policies that warn employees, in advance, that they will cease to accrue vacation time accumulated in excess of an announced limit." (*Owen, supra*, 175 Cal.App.4th at p. 470; see *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1602; *Henry v. Amrol, Inc.* (1990)

8

222 Cal.App.3d Supp. 1, 5.) The court explained: "If an employer's written vacation policy may legitimately prevent an employee from earning additional vacation compensation well into the course of the employee's career, when the employee has 'maxed out' on unused vacation time—without causing an illegal forfeiture of vested vacation—then the opposite is equally true. The employer's written vacation policy may legitimately prevent a new employee from earning any vacation time at all, just as the policy may deny long-term employees any further vacation time. In effect, these written policies forewarn employees that if they begin a career at these companies, (1) they will not earn any vacation time during the first six months, and they will not vest in or forfeit any vacation compensation if they leave during that initial period, but they will earn and vest in vacation time after six months and (2) if they choose to continue their career at these companies, they will earn vacation up to a certain maximum amount, but if they continue to work after reaching this maximum, they will not be compensated for or vest in additional vacation time. [¶] . . . '[T]he rule against forfeiture of *accrued* vacation rights, by its own terms, cannot apply to vacation pay which is to be earned in the future, i.e., which has not yet accrued.' [Citation.]" (*Owen*, at p. 471.) The *Owen* court thus held the employer's policy "legitimately prohibited new employees from earning any amount of vacation for the first six months" and therefore there was no unlawful forfeiture. (*Ibid*.)

III. *Analysis*

Both *Suastez* and *Owen* instruct that once an employee becomes eligible to earn vacation benefits he or she is simultaneously entitled to payment for unused vacation

9

upon separation. And both confirmed this benefit is vested and cannot be taken away by contract. This is true whether, as in *Suastez*, the employer promised that the employee would earn one week paid vacation beginning in the first year (*Suastez, supra*, 31 Cal.3d at pp. 776-777, fn. 2), or, as in *Owen*, where the employer promised that employees would be eligible to " 'earn and vest in paid vacation after they have completed six months of continuous employment' " (*Owen, supra*, 175 Cal.App.4th at p. 465, underscoring omitted). In both cases, when an employee becomes eligible for benefits, he or she is entitled to receive those benefits, and they cannot be taken away. But the *Owen* court held the employer may provide a waiting period *before* the employee becomes eligible to earn vacation, and if the employer's policy is clearly stated, the waiting period policy is enforceable.

We agree with *Owen*'s holding, and find Minnick's challenges to be legally unsupported. Contrary to Minnick's assertions, *Suastez* does not prohibit an employer from imposing a waiting period, or *require* that an employer provide vacation pay vesting on day one of the employment. Interpreting section 227.3, *Suastez* held that *vested* vacation pay cannot be taken away and that all vacation pay is vested when earned, but the court did not consider the issue whether an employer may control when the vacation benefit begins to accrue. As Minnick concedes, an employer may lawfully decide it will not provide paid vacation. By logical extension, an employer can properly decide it will provide paid vacation after a specified waiting period. This is similar to an employer's authority to limit the amount of vacation pay that may be earned. If employers can

10

lawfully restrict vacation accrual at the back end, it follows that employers can lawfully impose a waiting period at the front end.

Minnick argues that *Suastez* prohibits an employer from "contract[ing] around the rule against forfeiture" of wages. We agree. But that is not what defendants did here. An employer does not "contract around" the forfeiture prohibition by providing that an employee does not begin to earn vacation pay until a certain date.

Minnick alternatively contends *Owen* is not controlling because defendants' vacation policy did not clearly provide for a waiting period. Defendants' policy provides that an employee does not "earn" vacation pay until "after completion of one year of service," and states: "This means that after you have completed your first anniversary with the company, you are entitled to take one week of paid vacation, and after the completion of two years service, you will accrue two weeks paid vacation per year. This does not mean that you earn or accrue $1/12^{th}$ of one week's vacation accrual each month during your first year. You must complete one year of service with the company to be entitled to one week vacation." Under its plain meaning, this policy language provided for a waiting period and did not constitute a forfeiture policy. The policy states that before employees "earn" a vacation benefit, they must complete one year of service. The example in the final sentences makes clear that an employee does not "earn" or "accrue" vacation in the first year of service, and thus is not entitled to a pro rata amount of vacation pay during the first year.

Focusing on the policy's statement that an employee " 'must complete one year of service . . . to be entitled to one week vacation,' " Minnick argues defendants' policy is

11

ambiguous because it could be construed to mean that completing the first year is a condition to obtaining pay for the vested vacation benefit, a condition prohibited by *Suastez.* This interpretation of the policy language is not reasonable. Minnick fails to consider the meaning of this sentence in the context of the entire paragraph. Viewed in a commonsense and reasonable manner, the policy language reasonably informs employees that their vacation-accrual begins after the completion of their first year.

The unpublished federal district court decision relied upon by Minnick is distinguishable. (*Lopez v. G.A.T. Airline Ground Support, Inc.* (U.S. Dist. Ct., S.D.Cal., July 19, 2010, No. 09-CV-2268-IEG (BGS)) 2010 WL 2839417 (*Lopez*).) In *Lopez*, the employer's vacation policy provided: " 'Upon completion of one year of continuous employment, hourly employees will receive 5 days of paid vacation [and then] [e]mployees will continue to receive 5 days of paid vacation annually on their Anniversary Date.' " (*Id.* at p. *3.) The district court found the existence of a factual issue as to whether this policy required employees to forfeit vested vacation pay, noting that, unlike *Owen*, the policy did not state that employees do not " 'earn and vest in paid vacation' " during the first year. (*Id.* at p. *4.) The court also noted that a payroll manager had testified the plaintiffs' vacation benefit at the end of the first year was not an " 'advance' " for vacation earned. (*Ibid.*)

We agree with the *Lopez* court that the employer's policy at issue did not unambiguously provide that vacation was not earned from the first day of work. The policy stated that after the first year "[e]mployees will *continue* to receive 5 days of paid vacation," suggesting the employer would apply the same accrual rules in the first year of

12

employment as in subsequent years. (*Lopez, supra*, 2010 WL 2839417, at p. *3, italics added.) This case is different. Defendants' policy—providing that "[a]ll employees earn 1 week of vacation *after* completion of one year service . . ." and that they do not "earn or accrue 1/12th of one week's vacation . . . each month during [the] first year"—fairly informed defendants' employees that they do not "earn" or "accrue" vacation until "after" completing their first year.

We also find unavailing Minnick's contention that the fact the employee "receives" the one week vacation benefit at the beginning of the second year means this was already a vested benefit. An employer has the authority to "front-load" the vacation benefit, permitting the employee to take a one week paid vacation during the second year, even before it is fully earned, but to provide that if the employee were to leave before the end of the second year, he or she would be entitled to only a pro rata share (the vested portion) of the benefit. An employer's decision to do so does not provide evidence that it is requiring the forfeiture of vested vacation benefits.

Finally, we reject Minnick's argument that the court erred in denying him the "opportunity to introduce evidence as to the interpretation and application of the Policy." In ruling on a demurrer, the court considers the allegations, and not the evidence. (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) If Minnick wanted to add facts in the complaint based on certain evidence, he could do so by seeking leave to amend the complaint. As explained below, Minnick did not identify any additional facts that would support a viable cause of action.

13

IV.  *Amendment*

An appellate court must reverse a judgment sustaining a demurrer if there is a reasonable possibility the defect can be cured by amendment.  (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.)  The plaintiff has the burden of proving a reasonable possibility of curing a defect by amendment.  (*Ibid*.; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.)  The appellant must " ' " 'clearly and specifically' set forth . . . [the] factual allegations that sufficiently state all required elements" of a cause of action.' "  (*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 559; accord, *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1504.)

Minnick contends the court erred in refusing to allow him to amend because he could add facts to show that during the second year of employment, defendants require employees to forfeit earned vacation pay.  He recognizes that he has no standing to recover for defendants' vacation policy violations in the second year (he was terminated before his first anniversary date), but he argues that "by implication" this evidence would suggest "the existence of extrinsic facts that would affect the interpretation of the [employer's vacation policy] in year one."

The premise of the argument is logically flawed.  Even assuming it is true that defendants violate California law and/or the plain language of their policy with respect to second-year employees, it does not logically follow that defendants' written vacation policy means something different than what it says.  There is nothing about defendants'

14

alleged treatment of vacation pay in an employee's second year that would alter the plain meaning of its waiting-period policy in the first year.

In his reply brief, Minnick contends for the first time that he could amend the complaint to allege that defendants intended to "fashion the first year's vacation wages as a 'gift,' " citing to a managing officer's deposition testimony. This argument is not properly before us because it was not included in the opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.) And even assuming we could consider this deposition testimony, it does not suggest Minnick could amend the complaint to state a viable claim under California law. According to Minnick's account, this deponent specifically stated, "The first year you don't accrue anything." The deponent's additional references to gifts and accruals cannot be reasonably read to establish a contrary rule. The cited deposition testimony does not support that Minnick accrued or earned vacation pay in his first year. Moreover, because we have found the policy is not ambiguous, its meaning cannot be changed based on the employer's alleged contrary subjective understanding of its terms.

*Lopez* does not support a different conclusion. In *Lopez*, the vacation policy did not unambiguously provide for a waiting period for accruals, and the payroll manager's deposition testimony supported that conclusion. (*Lopez, supra*, 2010 WL 2839417.) Here, the policy does provide for a waiting period, and the proffered deposition testimony does not suggest a different intent.

DISPOSITION

Judgment affirmed.  Appellant to bear respondents' costs on appeal.


                                                                    HALLER, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.

16